STATE, Respondent, v. MONSOOR, Appellant.*

*No. State 104. Submitted November 29, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 20.)

---

* Motion for rehearing denied, without costs, on February 27, 1973.

For the appellant the cause was submitted on the briefs of *Doyle & Woodmansee,* attorneys, and *Patrick R. Doyle* of counsel, all of La Crosse.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

WILKIE, J. Defendant raises five claims of error by the trial court:

1. Was defendant's arrest illegal and thereby precluded the trial court from having personal jurisdiction?

2. Did the trial court err by not submitting possession of the dangerous drug as a lesser-included offense?

3. Did the trial court err in giving an instruction on aiding and abetting?

4. Did the trial court abuse its discretion in striking the entire testimony of a defense witness who, on cross-examination, refused to answer certain questions?

5. Did the trial court err in permitting evidence concerning the presence of marijuana at defendant's residence?

1. *Personal jurisdiction.* Defendant claims that his arrest was illegal and that this deprived the trial court of jurisdiction over his person. Defendant filed a timely motion to dismiss together with an affidavit attacking the arrest. In his affidavit, the defendant states he was awakened on the morning of May 13, 1971, by a police officer who was holding a pistol to the defendant's face. Defendant states that he heard no knock or announcement by the officer, "and believes that said officer entered the home without knocking and without announcing [his] authority or purpose."

This was an arrest executed pursuant to an arrest warrant and no attack is made here on the sufficiency of the complaint underlying that warrant. Thus the sole attack on the arrest is that the officer entered the premises without knocking and without first announcing his authority or purpose. In *State v. Williams,*[1] relied

---

[1] (1970), 47 Wis. 2d 242, 177 N. W. 2d 611.

on by defendant, an illegal arrest was held to result, as defendant argues, in a lack of personal jurisdiction. However, that arrest involved a situation where the arrest warrant was not based upon a sufficient complaint.

Concurring with the majority of jurisdictions which have dealt with the question,[2] this court has refused to hold an illegal execution of a valid arrest warrant sufficient to result in a loss of personal jurisdiction over the accused.[3] In *Nadolinski v. State*,[4] the defendant moved to dismiss the case prior to trial on the basis " '[t]hat Milwaukee Police Department, without reason, cause or warrant, physically broke down the door of the defendant's home and arrested him contrary to the fourth amendment to the Constitution of the United States.' " In response to this contention the court stated:

". . . The remedy for the use of excessive force in making an arrest may be a civil action for damages, but not dismissal of the criminal charge for which he was arrested. The police in this instance had probable cause to arrest the defendant and the forced entry (if in fact it was) does not compel a dismissal of the charge."[5]

Without question *Nadolinski*, a warrantless arrest situation, applies to the instant case where a valid arrest warrant existed at the time of the allegedly illegal entry into defendant's home.

Since defendant's contention that an illegal execution of an arrest warrant results in a loss of personal jurisdiction is falsely premised, also falsely premised is his further assertion that the trial court committed error in ruling on the motion to dismiss without holding an

[2] *See* 21 Am. Jur. 2d, *Criminal Law*, p. 401, sec. 380; Annot. (1935), 96 A. L. R. 982.

[3] *See e. g., Baker v. State* (1894), 88 Wis. 140, 147, 59 N. W. 570.

[4] (1970), 46 Wis. 2d 259, 266, 174 N. W. 2d 483.

[5] *Id.* at page 267.

evidentiary hearing. The denial of defendant's motion to dismiss based upon an illegal arrest would appear to be proper regardless of the lack of an evidentiary hearing.

2. *Possession as a lesser included offense.* Defendant argues that the trial court committed error when it refused to submit the case to the jury with the opportunity for it to return a verdict on the lesser included offense of possession of a dangerous drug. The criterion for submission of a lesser included offense under sec. 939.66, Stats.,[6] has been often reiterated by this court. In *State v. Melvin,*[7] it was stated:

"The early cases point out and emphasize and we must stress again, because the question keeps recurring, that a determination of whether an instruction on a lesser included crime should be given to a jury is not solved by merely determining the crime charged includes the lesser offense because juries are not to be given the discretion or freedom to pick and choose what offense the accused should be found guilty of. *Weisenbach v. State* (1909), 138 Wis. 152, 119 N. W. 843. The evidence must throw doubt upon the greater offense. Juries cannot rightly convict of the lesser offense merely from sympathy or for the purpose of reaching an agreement. They are bound by the evidence and should be limited to those included crimes which a reasonable view of the evidence will sustain and does not convince beyond a reasonable doubt the additional element of the greater crime existed." (Emphasis supplied.) [8]

---

[6] Sec. 939.66, Stats.: "**Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ."

[7] (1970), 49 Wis. 2d 246, 181 N. W. 2d 490. *See also: Hughes v. State* (1972), 55 Wis. 2d 477, 480, 481, 198 N. W. 2d 348.

[8] *Supra,* footnote 7, at page 253. *See also: State v. Chacon* (1971), 50 Wis. 2d 73, 78, 183 N. W. 2d 84; *Kimmons v. State*

In the instant situation the state quite correctly notes that there was absolutely no doubt but what defendant sold the marijuana. He admitted it during trial. Therefore, it is advanced, the trial court was justified in refusing to submit possession as a lesser-included offense. Defendant argues, however, that the logical conclusion of the state's position results in a total inability to request the lesser-included instruction when the entrapment defense is also advanced. Entrapment, of course, necessarily admits the act charged [9] and, therefore, one of the elements necessary for the lesser-included-offense instruction to be given can never be had. Defendant urges this court to hold that this places him in an intolerable position—that of choosing between the entrapment defense and the possible submission of a lesser offense to the jury. The only solution, as defendant views it, is for this court to hold that the requirement that there be a "doubt upon the greater offense" [10] is satisfied whenever the jury believes entrapment occurred. To accomplish this, as defendant argues, this court must require the submission of the lesser included offense of possession when the defense entrapment is advanced. The jury will, therefore, convict of the lesser-included offense when the defendant has satisfactorily proven entrapment.

Defendant's argument overlooks the long settled law of this state that a jury, believing entrapment has occurred, has no alternative but to acquit a defendant. [11] The Wisconsin Criminal Jury Instructions make this point unequivocally clear:

(1971), 51 Wis. 2d 266, 269, 186 N. W. 2d 308; *State v. Zdiarstek* (1972), 53 Wis. 2d 776, 786, 193 N. W. 2d 833.

[9] *Hawthorne v. State* (1969), 43 Wis. 2d 82, 94, 168 N. W. 2d 85.

[10] *State v. Melvin, supra,* footnote 7.

[11] *State v. Hochman* (1957), 2 Wis. 2d 410, 414, 86 N. W. 2d 446. *See generally,* Note, 52 Marq. L. Rev. (1969), 406.

"Therefore, if the law enforcement officer, for the purpose of obtaining evidence on which to prosecute the defendant, used excessive incitement, urging, persuasion, or temptation, and, thus, created more than the usual or ordinary opportunity to commit the offense, and, prior to the inducement, the defendant was not already disposed and ready and willing to commit such an offense, the defense of entrapment is established, *and you should find the defendant not guilty.*" (Emphasis supplied.) [12]

The conclusion is clear. If the jury in the instant case believed entrapment had occurred, they were obligated to acquit defendant of the charged offense, not, as defendant suggests, convict him of the lesser offense.

We conclude, therefore, that the trial court was entirely correct in refusing to submit to the jury the lesser-included offense of possession of the dangerous drug.

3. *The aiding-and-abetting instruction.* Defendant also argues that the trial court committed error in giving its instruction on the issue of aiding and abetting. Defendant's position is that this instruction, based upon defendant's testimony that he sold the marijuana but that it did not belong to him, was prejudicially misleading to the jury.

Although defendant raised this objection prior to the trial court's instructions to the jury, he failed to renew the objection in his post-trial motions. This court has repeatedly held that an improper instruction is of that class of error which the trial court could have cured by granting a new trial. The failure to raise it in post-trial motions, therefore, was held to result in an inability to raise it as a matter of right on appeal. [13] In *Claybrooks v. State,* [14] this court stated:

[12] Wis J I—Criminal, Part I, 780. *See also: Sorrells v. United States* (1932), 287 U. S. 435, 53 Sup. Ct. 210, 77 L. Ed. 413.

[13] *State v. Van Beek* (1966), 31 Wis. 2d 51, 52, 141 N. W. 2d 873.

[14] (1971), 50 Wis. 2d 79, 183 N. W. 2d 139.

"No motion for a new trial was made in the trial court. The error urged to be prejudicial on this review, improper instruction, is the type of error which should be raised in such a motion. Because such a motion was not made, defendant cannot now seek a review here of the alleged error as a matter of right." [15]

On the merits of defendant's charged error, however, we are convinced that the aiding-and-abetting instruction, while probably superfluous in light of the fact that the state neither alleged nor proved the elements of sec. 939.05, Stats.,[16] did not prejudicially confuse the jury. This error, if any, falls within that class of alleged error which necessitates a showing of some actual confusion to the jury.[17] No actual confusion appears here.

4. *Striking the testimony of a defense witness.* Defendant's principal allegation of error by the trial court involves the trial court's striking of the entire testimony of defense witness Robert Lyons. Lyons testified on direct examination that he was a roommate of defendant's and, on the evening of the sale, March 16, 1971, it was he, rather than the defendant, who received the telephone call from Bowman and Kasabuske. Lyons testified that Bowman asked him if he had any marijuana. When he said "No," Bowman requested him to ask defendant. Lyons claimed he told Bowman to ask defendant himself when he arrived home. Lyons stated he hung up and immediately left the house—before the alleged sale transpired. Lyons further testified he had seen Bowman begging Monsoor for marijuana on several occasions but that defendant always refused.

---

[15] *Id.* at page 82. *See also: Bethards v. State* (1970), 45 Wis. 2d 606, 617, 173 N. W. 2d 634.

[16] Aiding and abetting does not always have to be charged in the information. *See Bethards v. State, supra,* footnote 15, at pages 617, 618.

[17] *Hyde v. State* (1915), 159 Wis. 651, 150 N. W. 965.

On cross-examination Lyons was interrogated at length about his criminal record. He then denied any knowledge of the marijuana which had been found at his and defendant's residence. The district attorney thereupon engaged in the following exchange with Lyons:

"*Q.* Ever smoked marijuana at the Lincoln street address? *A.* I don't see where I have to answer that.
"*Q.* Maybe not. Do you know anybody else who did? *A.* (Shakes head) I don't see where I have to answer that either. That has nothing to do with the case.
"*Q.* Well, I will ask that you answer it.
"*Mr. Doyle:* I object, Your Honor. That is irrelevant and immaterial, Your Honor."

After advising Lyons of his right not to answer, the trial court sustained the district attorney's motion to strike his entire direct testimony.

This court has not heretofore ruled on the proper course to be taken by a trial court where a witness refuses to answer certain questions propounded on cross-examination. The traditional rule has been to strike out the entire testimony of one who refuses to answer certain questions.[18] This is especially true where the person testifying is a party to the suit.[19] Wigmore states:

". . . Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out."[20]

McCormick generally agrees that the direct testimony should be stricken where a nonparty witness refuses to

---

[18] *See Stephan v. United States* (6th Cir. 1943), 133 Fed. 2d 87, certiorari denied, 318 U. S. 781, 63 Sup. Ct. 858, 87 L. Ed. 1148.
[19] *Rutger v. Walken* (1943), 19 Wash. 2d 681, 143 Pac. 2d 866.
[20] 5 Wigmore, *Evidence* (3d ed.), p. 112, sec. 1391.

be cross-examined. He notes that strict adherence to the right of cross-examination serves to prevent the temptation to solicit a witness's refusal to so testify.[21]

Both authors acknowledge, however, the growing trend to permit the striking of direct testimony of a party refusing to be cross-examined only where the answers refused are relevant and material.[22] This proposition received a clear statement in *United States v. Cardillo*,[23] a case wherein a government witness invoked the fifth amendment during cross-examination by defense counsel. The Second Circuit Court of Appeals affirmed the district court's refusal to strike the witness's testimony, stating:

"The district court was not in error in refusing to strike Ohrynowicz' testimony. After admitting to a substantial criminal record, Ohrynowicz invoked the privilege against self-incrimination when asked whether he committed other crimes in the past and whether he was guilty of certain crimes with which he was then charged in the state courts. *These questions were purely collateral for they related solely to his credibility as a witness and had no relation to the subject matter of his direct examination.* Since the trial court was aware of his substantial criminal record and the pendency of other criminal actions against him, the defendants were not prejudiced by Ohrynowicz' assertion of the privilege and, therefore, there was no need to strike his testimony." (Emphasis supplied.) [24]

---

[21] McCormick, *Evidence* (2d ed.), p. 44, sec. 19.

[22] *See, e. g.*, McCormick, *id.*: ". . . Finally, there is support for the notion that if the privilege against self-incrimination is invoked upon cross-examination to questions which go to the credibility of the witness and are otherwise immaterial, the testimony on direct examination should not be stricken, or at the least the judge should have an area of discretion in making his ruling on that matter." *See also:* 5 Wigmore, *Evidence* (3d ed.), p. 114, sec. 1391.

[23] (2d Cir. 1963), 316 Fed. 2d 606, certiorari denied, 375 U. S. 822, 84 Sup. Ct. 60, 11 L. Ed. 2d 55.

[24] *Id.* at page 611.

This position was also taken by the Eighth Circuit in *Coil v. United States*[25] on facts substantially similar to those in *Cardillo*. The court held that "the rule is that the testimony can be so used in cases where the cross-examination went only to collateral matters which bear on the credibility of the witnesses."

The better rule is that reflected in these federal cases wherein the trial court is held to have discretion as to striking the testimony of a person who has refused to answer questions on cross-examination. As these cases and the scholars indicate, such discretion should hinge upon a question's *relevancy* and *materiality* to the subject matter of the inquiry. Such a rule fits into this court's adoption of the Model Code of Evidence Rule 105, Control of Judge over Presentation of Evidence.[26] It will be recalled that the Model Code permits the judge to control the scope of cross-examination and:

" '. . . to what extent and in what circumstances a party cross-examining a witness may be forbidden to examine him concerning material matters not inquired about on a previous examination . . . .' "[27]

Whether this court will reverse for an abuse of discretion on the part of the trial court in controlling the scope of cross-examination was noted by this court in *Neider v. Spoehr,*[28] as follows:

". . . The exercise of discretion by the trial court to deny or restrict cross-examination must be dependent

[25] (8th Cir. 1965), 343 Fed. 2d 573, 579, certiorari denied, 382 U. S. 821, 86 Sup. Ct. 48, 15 L. Ed. 2d 67; *see also: United States v. Marcus* (2d Cir. 1968), 401 Fed. 2d 563, certiorari denied (1969), 393 U. S. 1023, 89 Sup. Ct. 633, 21 L. Ed. 2d 567; *Board of Trustees v. Hartman* (1966), 246 Cal. App. 2d 756, 55 Cal. Rptr. 144.

[26] *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129.

[27] *Id.* at page 182.

[28] (1969), 41 Wis. 2d 610, 618, 165 N. W. 2d 171.

upon the circumstances of the trial. This court will not reverse unless it clearly appears that the trial court abused its discretion and that the error affected a substantial right of the complaining party and probably affected the result of the trial."

Applying this standard we are satisfied that the trial court abused its discretion in striking the entire testimony of Robert Lyons as a result of his refusal to state whether or not anyone else ever smoked marijuana at his or defendant's residence. The district attorney's questions had nothing to do with the matter which was testified to on direct (who had received the telephone call from Bowman and Kasabuske), and these questions had no bearing on the prosecution of Monsoor for the alleged sale of marijuana. The only purpose of these questions was, as the state points out, to undermine the credibility of Lyons. But the credibility of a witness is a matter collateral to both defendant's guilt or innocence and the content of the witness's direct testimony. This is especially true where, as here, the prosecutor has gone into considerable detail elucidating the witness's past criminal record.

But to reverse the trial court for this discretionary determination requires a finding that the trial court's action must have "probably affected the result of the trial." [29] Here, we are satisfied that the trial court's action was not prejudicial. This testimony did not counter Monsoor's own evidence already in that he had in fact made sales of marijuana to Kasabuske and Bowman. Lyons only denied that Bowman had talked to the defendant on the phone on the day of the sale. Whether Bowman's phone conversation of March 16th was actually with Monsoor or Lyons is of no consequence. It did not have anything to do with the facts surrounding the actual sale. Who Bowman talked to on the phone as

[29] *Id.*

testified to by Lyons really went to the matter of Bowman's credibility and Bowman was not even a witness at the trial.

5. *Evidence of a large cache of marijuana found after the alleged sale.* Defendant's final allegation of error involves the trial court's allowance, over objection, of evidence concerning a large quantity of marijuana found by police officers in three pieces of luggage located in the basement of defendant's residence. This cache was discovered on April 26, 1971, approximately three weeks after the alleged sale of marijuana to the undercover agent. The testimony of the police officers who executed the warrant for this search was introduced by the state in an apparent effort to prove a pattern of defendant's conduct and thereby discredit or disprove his entrapment defense. The defendant argues that the trial court, in admitting this evidence, abused its discretion for two reasons, both indicating that the evidence was not probative of a course of conduct which would tend to discredit defendant's entrapment defense: first, because the discovery of the cache of marijuana occurred after the alleged sale and second, because there were five or seven other unrelated persons living in the same house.

This court in *State v. Hochman* [30] and *Hawthorne v. State,* [31] has made it quite plain that under the "origin of intent" entrapment test the government may introduce evidence which would serve to rebut a defendant's claim of entrapment. Judge LEARNED HAND, in *United States v. Becker,* [32] felt rebuttal evidence might tend to prove "an existing course of similar criminal conduct; the accused's already formed design to commit the crime or similar crimes; his willingness to do so, as evinced by ready complaisance." This evidence need not be con-

---

[30] *Supra,* footnote 11.

[31] *Supra,* footnote 9.

[32] (2d Cir. 1933), 62 Fed. 2d 1007, 1008.

fined to past felony convictions and criminal reputation,[33] and, as we have held, need not be limited to conduct occurring prior in time to the crime charged.[34] In *Hawthorne,* this court implicitly suggested evidence of a defendant's statements to a police officer indicating past similar conduct would be probative rebuttal evidence:

"If there was any question as to which test Wisconsin was following, it was certainly resolved in *State v. Hochman, supra,* at page 417:

" '. . . It is plain that the defendant's statement of selling the "hotter stuff" to his best customers indicated that the sale to the police officer was not an isolated transaction, but that the defendant had engaged in such activity in the past. It revealed too the defendant's predisposition,—his already formed design,—to commit the offense or similar offenses conditioned by safeguards against detection.' "[35]

It is clear that evidence which would rebut an entrapment defense may, in this state, encompass more than solely evidence of past criminal convictions.

It is difficult here to perceive a great deal of probative value, with regard to rebuttal of the entrapment defense, in this evidence of a large cache of marijuana and an assortment of smoking paraphernalia found at a subsequent date in defendant's residence. There were roughly five to seven unrelated occupants of the house wherein defendant resided. There was testimony that defendant had no contraband on his person or in his room during the search. At best, this evidence would tend to show the existence of a large quantity of marijuana out of which a sale could have been made. However, while the probative value of this evidence is slight, it is of some

---

[33] *See,* Annot. (1954), 33 A. L. R. 2d 883, 908.

[34] *Cheney v. State* (1969), 44 Wis. 2d 454, 460, 171 N. W. 2d 339, 174 N. W. 2d 1.

[35] *Hawthorne v. State, supra,* footnote 9, at page 93.

probative value and we conclude that the trial court did not abuse its discretion in allowing testimony concerning it to be introduced.

Defendant also claims the trial court did not give him an opportunity, prior to admitting it into evidence, to contest the constitutional validity of the search which occurred on April 26, 1971. Defendant's motion to suppress made before trial was clearly inadequate with respect to the results of this search. The motion only referred to "the direct result of an improper arrest." The supporting affidavit actually stated:

"Thomas Monsoor . . . deposes and says that he is the defendant in the above named action and that *at the time of his arrest* he believes there may have been a search of the premises. . . .

"That he makes this affidavit to support a motion to suppress any tangible items seized in any search of his person or the premises in which he was arrested." (Emphasis supplied.)

No mention was made in this motion upon which the trial court could rule, of the search which occurred on April 26, 1971. While a motion of this sort must generally be raised before trial or waived, sec. 971.31 (2), Stats., does permit a trial court to entertain such a motion at the trial.[36] Herein the defendant did, during trial, object to the police officer's testimony concerning the April 26th search and request a ruling as to its con-

---

[36] Sec. 971.31 (2), Stats.: "(2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. . . ."

stitutional validity. The trial court denied the motion without comment.

The motion was untimely,[37] since the defendant had no justifiable reason for waiting until the trial to make the motion. He could hardly claim that he was surprised by the testimony concerning the search made on April 26th. This search was, of course, known to the defendant and his counsel well before the trial, especially since other charges growing out of that search were launched against this defendant.

*By the Court.*—Judgment and order affirmed.

---

[37] *See Hayes v. State* (1968), 39 Wis. 2d 125, 132, note 2, 158 N. W. 2d 545; *Alston v. State* (1966), 30 Wis. 2d 88, 97, 140 N. W. 2d 286; *State v. Hoyt* (1964), 21 Wis. 2d 284, 296, 128 N. W. 2d 645.

* Motion for rehearing denied, without costs, on February 27, 1973.