SCHMIDT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 39. Argued April 10, 1975.—Decided May 8, 1975.* (Also reported in 228 N. W. 2d 751.)

For the plaintiff in error there were briefs by *David G. Walsh* and *Walsh & Walsh,* all of Madison, and oral argument by *David G. Walsh.*

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Victor A. Miller,* attorney general.

CONNOR T. HANSEN, J. The issues presented on this appeal are:

1. Whether sec. 975.05, Stats., denies the defendant's right to due process of law by failing to provide a hearing to review a recommendation of the department that the defendant is not in need of specialized treatment pursuant to the provisions of the Sex Crimes Law?

2. Whether the same statutory section violates the defendant's right to equal protection of the law?

We first set forth a chronological review of certain facts, although all of them do not relate to the narrow issues presented on this appeal.

In 1969, the defendant was convicted in Milwaukee county of the crime of threat to injure, contrary to sec. 943.30 (1), Stats. Following a presentence, a social, physical and mental examination by the department, as provided in sec. 975.01, it recommended that the defendant was in need of specialized treatment. The defendant was, therefore, committed to the department pursuant to sec. 959.15 (6), Stats. 1967 (now sec. 975.06) for such treatment. He was transferred by the department to the Central State Hospital for treatment.

In July, 1971, the defendant escaped from Central State Hospital and while an escapee committed the crime in Dane county which gives rise to the instant appeal.

Following his conviction on a plea of guilty entered before the Dane county court, the defendant was again committed to the department for a presentence social, physical and mental examination pursuant to sec. 975.01, Stats. The department recommended to the Dane county trial court that defendant was *not* in need of specialized treatment as provided by the Sex Crimes Law. It was also during these proceedings that the trial court denied the motion of the defendant for a hearing on the recommendation of the department that the defendant was *not* in need of specialized treatment. Sentence was imposed as provided by law.

The report of the department submitted to the trial court in this instance recommended that the defendant not be committed to the department for specialized treatment because the specific crime and the specific act for which the defendant was convicted was not the result of sexual psychopathology. In arriving at its recommendation, the department applied the criteria established by the department pursuant to sec. 975.06, Stats., and approved by this court in *State v. Torpy* (1971), 52 Wis. 2d 101, 114, 187 N. W. 2d 858, which are:

(1) Was the behavior for which the defendant was convicted the result of sexual psychopathology?

(2) Is the defendant dangerous to society?

(3) Is he treatable, or will he respond to treatment? [1]

In August, 1973, the Milwaukee county trial judge received a recommendation from the department that the defendant be continued under its control for the 1969 conviction past November, 1973, the date on which the 1969 commitment would expire. This recommendation was made pursuant to secs. 975.12 and 975.13, Stats. 1971. Once a person has been committed to the department pursuant to sec. 975.06, for specialized sex deviant

---

[1] *State ex rel. Farrell v. Stovall* (1973), 59 Wis. 2d 148, 160, 207 N. W. 2d 809, recognizes that one of the elements of original commitment is "treatability" of the individual.

treatment with regard to a particular offense, the standards for the continuance of such control are set forth in sec. 975.14 (2). The statutory standard requires that the department determine that the person would be *dangerous to the public because of the person's mental or physical deficiency, disorder or abnormality. State v. Torpy, supra,* pages 115, 116. The department applied this standard in making its recommendation for an extension of control. A hearing was held pursuant to sec. 975.14, and the Milwaukee trial judge ordered a five-year extension of the defendant's commitment and directed that he be sent to the Wisconsin Sex Deviate Center. Sec. 975.15 provides that a commitment (in this instance the 1969 Milwaukee commitment) may be continued for additional periods of five years by the trial court upon recommendation of the department and after due notice and hearing as provided by statute and law.

At oral argument in this case, it was stated that the defendant is presently at Central State Hospital. Sec. 975.06 (6), Stats., provides:

"**975.06  Commitment to the department.**

" . . .

"(6) Persons committed under this section who are encumbered with other sentences, whether concurrent with or consecutive to the commitment, shall be received or remain at the sex crimes facility designated by the department. Such facilities may be regarded as state prisons for the purpose of beginning the other sentences, crediting time served on them, and computing parole eligibility dates."

Therefore, in the instant case the defendant is serving the sentence imposed by the Dane county trial court and the commitment ordered by the Milwaukee county trial court concurrently.

This case is the reverse of *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646. In *Huebner,* it was determined that before a person, convicted of certain

specific sex crimes, could be committed to the department for specialized treatment instead of being sentenced under the applicable penal penalties, the defendant was entitled to a hearing. *See:* Sec. 975.06, Stats.

Essentially, in this case the defendant asks for a hearing after conviction as to why he should not be committed as a sex deviant instead of being sentenced under the penal statute of conviction. The defendant wishes the opportunity to prove that his actions were the result of sexual psychopathology; that he is dangerous to society; and that he is treatable or will respond to treatment. We conclude that he is not entitled to such a hearing when the recommendation of the department is that he is not a sex deviant.

The defendant recognizes that *Huebner, supra,* is not controlling. We agree. This court stated in *Huebner, supra,* page 526:

"We consider this commitment procedure [Sex Crimes Law] so essentially different from penal sentencing as to amount to an independent proceeding which determines such important rights of the defendant unrelated to the determination of guilt that due process requires a hearing thereon as much as it does for subsequent hearings on the same issue."

*See also: Specht v. Patterson* (1967), 386 U. S. 605, 87 Sup. Ct. 1209, 18 L. Ed. 2d 326.

The invocation of a commitment under the Sex Crimes Law is predicated upon a determination of facts which are not elements of the crime for which a person was convicted. Also, a commitment to the department under the Sex Crimes Law automatically determines the initial maximum period of incarceration and subjects the person to potential continuing incarceration and treatment for life. For these and other reasons, this court in *Huebner, supra,* determined that due process and equal protection dictated a hearing as therein set forth before

a person could be committed to the department under the Sex Crimes Act.

When a person is determined not to be a sex deviant with regard to the commission of the particular crime for which he has been convicted and is sentenced under the penal statute, none of the elements or factors considered in *Huebner, supra,* and related cases are present. The person is neither automatically subjected to the maximum period of incarceration nor is he subjected to the risk of a continuing, indefinite, incarceration based upon facts which are not ingredients of the crime for which he was convicted.

The defendant contends that procedural due process is required in the present case because persons who have committed an offense particularized by sec. 975.01, Stats., requiring their commitment to the department for a presentence social, physical and mental examination, fall within a category of persons having an entitlement to specialized sex deviant treatment.

In *Goldberg v. Kelly* (1970), 397 U. S. 254, 90 Sup. Ct. 1011, 25 L. Ed. 2d 287, it was determined that a person receiving welfare benefits had an interest in the continued receipt of those benefits that is safeguarded by procedural due process. In *Morrissey v. Brewer* (1972), 408 U. S. 471, 481, 92 Sup. Ct. 2593, 33 L. Ed. 2d 484, the supreme court held that a parolee whose parole was revoked, was, in effect, an individual " 'condemned to suffer grievous loss' " by the revocation decision and hence entitled to procedural due process protections.

In *Board of Regents v. Roth* (1972), 408 U. S. 564, 577, 92 Sup. Ct. 2701, 33 L. Ed. 2d 548, the supreme court summarized its view of entitlements as property rights as follows:

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings

that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so."

The range of interests protected by procedural due process, however, is not infinite. *Board of Regents v. Roth, supra.* In the *Roth Case,* the supreme court held that an untenured professor, who had a one-year teaching contract and no promise of retention beyond that year, did not have a sufficient property right in the job to require that a due process hearing be held before he could be discharged at the end of that contract period. Thus, in the *Roth Case* there was no basis for showing an entitlement. *Compare: Perry v. Sindermann* (1972), 408 U. S. 593, 92 Sup. Ct. 2694, 33 L. Ed. 2d 570.

Each of the foregoing cases turns on the rationale that the fourteenth amendment prevents the state from depriving a person of life, liberty, or property, without due process of law, and that the right to procedural due process is applicable only to state action which impairs a person's interest in either life, liberty or property. In each of the cases where procedural due process was extended to protect the determination of entitlement, the individual was already the recipient of the benefit sought and would have continued a recipient absent an adverse determination of entitlement. The question raised in those cases was whether the benefit could be withdrawn without a due process hearing. On the other hand, the *Roth Case* indicates that cases where the question is whether a person is entitled to a benefit in the first instance, not having been a previous recipient or where

the previous receipt carried with it no express or implied guarantee of continued entitlement, stand on a different basis. There the question is not one of deprivation, but of conditioning the initial receipt.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth, supra,* page 576.

We are of the opinion that the present case falls within this latter category. The statute conditions the receipt of specialized sex deviant treatment upon the affirmative recommendation of the department giving due regard to the particular individual and the specific crime with which he is convicted.

In the instant case, the department determined the commission of the 1971 crime was not the result of sexual psychopathic behavior. The defendant was sentenced under the penal statutes for a fixed term, subject to established rules for good-time allowances and conditional and mandatory release procedures. We recognize the words "liberty" and "property" have been expanded to mean more than absolute freedom or the actual ownership of real estate, chattels or money. However, we deem it stretches the concept of an entitlement too far to suggest that the legislature cannot create a limited program of specialized sex deviant treatment for those felt most necessitous of such a program without creating a property right of constitutional proportions in every person who might arguably benefit from such treatment. Therefore, we are of the opinion the determination that the 1971 criminal act of the defendant was not the result of sexually deviant behavior does not subject the defendant to a "grievous loss" and that he has not been deprived of liberty or property without due process of law.

The defendant additionally contends that he has acquired a special interest in specialized sex deviant

treatment, requiring procedural due process protection, because of the finding of the department following the 1969 Milwuakee conviction that the defendant was in need of specialized sex deviant treatment, and the department's subsequent recommendation in November, 1973, that the defendant's sex deviant commitment be continued.

Part of the defendant's argument in his brief was based on the belief that the penal sentence, which intervened between the 1969 commitment and the 1973 extension of that commitment, prevented the defendant from receiving the treatment recommended and ordered. It was conceded on oral argument, however, that the defendant is now receiving the treatment he seeks. As stated above, sec. 975.06 (6), Stats., provides for the continuation of this treatment despite the penal sentence and further provides for the concurrent running of the penal sentence and sex deviant commitment.

The existence of the department's recommendation following the 1969 conviction, does not impress us as giving the defendant any greater claim to an entitlement than any other person convicted of one of the crimes specified in sec. 975.01, Stats. The statutes and standards governing the administration of the Sex Crimes Law are designed to deal separately, not only with each individual but also with each conviction of that individual. Thus, the determination made in 1969, with regard to one crime has little bearing on a subsequent recommendation with regard to a different crime. Nor do we find any significance in the fact that the defendant was recommended for an extension of his commitment in 1973. The standards for continuation of the commitment differ from the standards governing an initial commitment in significant regards.

We conclude that the defendant has not been denied procedural due process because sec. 975.05, Stats., does not provide for a hearing when the department does not

recommend specialized treatment and commitment on account of his mental and physical aberrations. Our disposition of the due process arguments advanced by the defendant also disposes of the equal protection arguments.

In each case relied upon by the defendant, the comparison drawn for equal protection analysis was between a civil commitment procedure and a criminal commitment procedure. This court, in *State ex rel. Farrell v. Stovall, supra,* compared a commitment under the Sex Crimes Law to a commitment under the Mental Health Act in ch. 51, and thus, in effect, looked upon such a commitment as a new and distinct proceeding. In *Baxstrom v. Herold* (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. 2d 620, the petitioner was committed to a mental institution at the expiration of his criminal sentence in a state prison. It was held he was denied due process and equal protection when such a commitment was made without a judicial determination as provided in the case of civil commitments. In *Specht v. Patterson, supra,* the petitioner was convicted of a sex crime that provided for a maximum penal sentence of ten years. He was sentenced under the Colorado Sex Offender's Act which provided for an indeterminate term of from one day to life without notice or full hearing. It was held that these commitment proceedings are subject to both the equal protection clause and the due process clause of the fourteenth amendment.

Each of these cases dwells upon the substantial deprivations of liberty involved in the essentially separate commitment procedure. Similar considerations guided this court's determination in *Huebner, supra.* However, the deprivations of liberty, both real and potential, based upon factual determinations which are not elements of the crime of conviction when a person is recommended for commitment, are not present when a person is not

recommended for commitment and specialized treatment. To grant a hearing to the former, and deny it to the latter, therefore, does not amount to an unreasonable or arbitrary classification.

*By the Court.*—Judgment affirmed.