COLUMBIA COUNTY and others, Plaintiffs, v. BOARD OF TRUSTEES OF WISCONSIN RETIREMENT FUND, Defendant.*

*June 7—June 29, 1962.*

---

* Motion for rehearing denied, without costs, on October 2, 1962.

312

For the plaintiffs there were briefs by *Quarles, Herriott & Clemons* of Milwaukee, special counsel, attorneys; and *Maxwell H. Herriott* and *Laurence C. Hammond, Jr.,* both of Milwaukee, and district attorneys *David H. Bennett* for Columbia county, *Pat H. Motley* for Buffalo county, *Donald J. Oakey* for Burnett county, *John J. Haka* for Portage county, *James R. Seering* for Sauk county, *Terence N. Hickey* for Sawyer county, *Larry A. Sieger* for Vernon county, and *Edward R. Macklin* for Waupaca county, of counsel; and oral argument by *Mr. Maxwell H. Herriott* and *Mr. Hammond.*

For the defendant the cause was argued by *J. R. Wedlake,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

Briefs *amici curiae* were filed by *Lawton & Cates* of Madison, for the Wisconsin Professional Policemen's Association, Wisconsin Council of County & Municipal Employees, Wisconsin County Police, Deputy Sheriffs & Radio Operators Association, Wisconsin State Employees Association, Wisconsin Paid Firemen's Association, and United Professional Firefighters of Wisconsin; by *Julian Bradbury* of Madison, legal counsel for the League of Wisconsin Municipalities; and by *John J. Fleming,* city attorney of Milwaukee, and *Harry G. Slater,* deputy city attorney, legal counsel for the Employees' Retirement System of the city of Milwaukee.

HALLOWS, J. Standing on the threshold of the constitutional issues is the question whether the plaintiffs have the legal capacity to sue and the right to contest the constitutionality of ch. 459, Laws of 1961. No doubt, counties and a taxpayer have the capacity to bring a suit for declaratory relief under sec. 269.56, Stats. Sub. (13) thereof expressly so provides, and sec. 59.07 authorizes a county to commence and maintain an action to protect its interests. However,

neither section abrogates the traditional rule that a county does not have the legal right or status as against the state or another state agency to contest the constitutionality of a statute. Upon the reasoning a city was a municipal corporation and a metropolitan sewerage district was a quasi-municipal corporation, both being political subdivisions of the state created as convenient agencies for the exercising of such governmental powers of the state as may be intrusted to them and as such were creatures of the legislature and an arm of the state, we held in *Madison Metropolitan Sewerage Dist. v. Committee* (1951), 260 Wis. 229, 50 N. W. (2d) 424, that the city of Madison and the metropolitan sewerage district did not have any standing to contest the constitutionality of the state law there in question. While there is a distinction between a county and a village or city and the former is generally classified as a quasi-municipal corporation rather than a municipal corporation, *State ex rel. Bare v. Schinz* (1927), 194 Wis. 397, 216 N. W. 509, the distinction is not material in this case.

A county as a quasi-municipal corporation and as an arm of the state has no right to question the constitutionality of the acts of its superior and creator or of another arm or governmental agency of the state. A county or a governmental agency is created almost exclusively in the view of the policy of the state at large for purposes of political organization and civil administration in matters of state concern. 1 McQuillin, Mun. Corp. (3d ed.), pp. 311, 497, secs. 1.88, 2.46. *Young v. Juneau County* (1927), 192 Wis. 646, 212 N. W. 295. In two recent cases [1] we have made an exception to the general rule after stating it as follows:

[1] *Fulton Foundation v. Department of Taxation* (1961), 13 Wis. (2d) 1, 11, 108 N. W. (2d) 312, 109 N. W. (2d) 285; *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 469, 109 N. W. (2d) 271.

"State agencies or public officers cannot question the constitutionality of a statute unless it is their official duty to do so, or they will be personally affected if they fail to do so and the statute is held invalid."

In *Fulton,* we allowed the department of taxation, in the tax case brought by a private taxpayer, to raise in defense the question of constitutionality on the ground of an exceptional situation involving issues of great public concern. Likewise, in *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. (2d) 447, 109 N. W. (2d) 271, under the same reasoning, we allowed the city of Milwaukee to raise the question of constitutionality in a tax case brought by a taxpayer. It will be noted in both these cases, neither the city nor the state agency was suing the state of Wisconsin or another state agency. We are not disposed to extend the exception to the general rule to cover suits between two agencies of the state government or between an arm of the government and the state itself. Nor does this case involve any official duty of the county to raise the question of constitutionality or any personal liability if it fails to do so and the statute is held invalid.

In *Madison Metropolitan Sewerage Dist. v. Committee, supra,* we also stated the taxpayer had no standing to sue because he had no other or higher right than that which the district or municipality itself could claim and his action was derivative in nature. However, the *Madison Metropolitan Case* is not controlling of the taxpayer's rights in this case. In essence, ch. 459, Laws of 1961, is concerned with the operation and administration of a county as a political subdivision of the state. The county, in such capacity, does not represent the taxpayers, as we said a city might act in the *Associated Hospital Case.*

The injury to the individual taxpayer in this suit is distinct from the injury complained of or alleged by the county. If the taxpayer was attempting to protect the same interests

which the county was attempting to protect if it could sue, the taxpayer's suit would be derivative. But here, the taxpayer alleged in his complaint a direct pecuniary loss to him as a taxpayer of the state of Wisconsin and to other taxpayers similarly situated. This allegation was admitted by the demurrer and meets the requirements of the taxpayer's action for his own injury as declared in *S. D. Realty Co. v. Sewerage Comm.* (1961), 15 Wis. (2d) 15, 112 N. W. (2d) 177.

Unless an individual taxpayer can ground an action for an injury to himself and raise the question of unconstitutionality of the laws so affecting him, the legislature could with impunity violate the constitutional limitations of its powers by enacting statutes affecting counties and the taxpayers thereof and be free from challenge in the state courts, leaving only a taxpayer to sue in the federal courts in those instances where such violation of the state constitution also violated the rights guaranteed by the federal constitution and the taxpayer can meet the other federal requirements for such a suit. The state's legislative control of municipalities, like other state power, is not entirely beyond the scope of some limitations imposed by the United States constitution. *Gomillion v. Lightfoot* (1960), 364 U. S. 339, 81 Sup. Ct. 125, 5 L. Ed. (2d) 110. The authority of the legislature over a municipal corporation, while supreme, is subject to such limitations as may be prescribed by the state constitution. *State ex rel. Martin v. Juneau* (1941), 238 Wis. 564, 300 N. W. 187; *State ex rel. Zilisch v. Auer* (1928), 197 Wis. 284, 221 N. W. 860, 223 N. W. 123.

We hold that while the counties cannot raise the issue of unconstitutionality against another agency of the state, the individual taxpayer and resident of one of the counties affected in his individual capacity by ch. 459, Laws of 1961, has the capacity to bring this suit and the right to raise the

constitutional issue on behalf of himself and the other tax-payers.

*Constitutional Issues.*

The plaintiffs raise many constitutional issues which will be discussed seriatim. On at least two prior occasions, this court has declared the subject of pensions for certain public employees is a matter of statewide concern.[2] While pensions for teachers, policemen, and firemen raise more dramatically the concern of the public, nevertheless pensions for other county employees are of real and abiding interest of the state because of the local execution of its laws and policies by counties. It may be true, the state has lagged behind private industry in providing pensions but the merits, necessity, and purposes of pensions for employees are generally accepted both by employers and employees in and out of government service as part of our way of life. To maintain a high caliber of personnel in government service, governments and units thereof must compete with private industry. In so competing, one method is to offer attractive retirement plans. The establishment of statewide benefits for county personnel is a matter of statewide concern. By 1961, 43 counties had voluntarily come under the state pension system but 26 counties, including the plaintiffs, had not kept pace with the times. Ch. 459, Laws of 1961, mandatorily included these counties in the Fund. The basic issue in this case stems from the fact the plaintiff counties, as arms of the state government, object to the compulsion of the state by virtue of this law to provide pensions for their employees. This, we have held, they had no status to do.

---

[2] *State ex rel. Dudgeon v. Levitan* (1923), 181 Wis. 326, 193 N. W. 499 (upholding the Teachers' Retirement Act); *Barth v. Shorewood* (1938), 229 Wis. 151, 282 N. W. 89 (upholding the law bringing certain villages under sec. 62.13, Stats., relating to policemen and firemen pensions).

## Ch. 459, Laws of 1961, Is a Public Law.

The plaintiff taxpayer contends ch. 459, Laws of 1961, is a local law and embraces three subjects, one of which is not expressed in the title and thereby violates sec. 18, art. IV of the Wisconsin constitution.[3] The constitution does not define a private or local bill but the plaintiff contends a bill is local when it affects only a specific locality or only a portion of the state except when the portion of the state affected constitutes a legitimate legislative class, relying on *Milwaukee County v. Isenring* (1901), 109 Wis. 9, 85 N. W. 131, and *Whitefish Bay v. Milwaukee County* (1937), 224 Wis. 373, 271 N. W. 416. The provisions of the constitution are not applicable to a public and general act of the legislature which may contain matters outside of its title. *Lawton v. Waite* (1899), 103 Wis. 244, 79 N. W. 321. The reason for this requirement concerning local bills was to inform persons concerned with the nature and intent of the enactment and prevent the possibility of legislators or persons affected from being misled by the title.

A law which affects the entire state is general but a law may affect less than the entire state without losing its status as a general law. *Lamasco Realty Co. v. Milwaukee* (1943), 242 Wis. 357, 8 N. W. (2d) 372, 8 N. W. (2d) 865. The difficulty arises under what circumstances the classification is proper. In *Federal Paving Corp. v. Prudisch* (1940), 235 Wis. 527, 293 N. W. 156, two groups of decisions were distinguished. A classification which applied only to cities of the first class was denominated "local" because by the terms of the act involved, it could not apply to any other city than Milwaukee. The other group classification, while applying to Milwaukee, was held to be general since by its terms it

---

[3] Sec. 18, art. IV, provides, "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

could apply in the future, however remotely that might be, to more than one city. This was the distinction between a closed and an open class. The plaintiffs contend the mandatory inclusion of 26 counties classified by reference to existing circumstances only created a closed class and the granting to those counties of the option to elect the rate of prior-service credits not given to other counties was a legislative conglomeration which the constitution sought to prevent.

It is true, ch. 459, Laws of 1961, in effect, applies to 26 counties, but we do not see that the chapter makes a classification upon existing circumstances only, because of that fact. The net effect of ch. 459 is not to classify at all but to make county pension systems uniform throughout the state. If the 26 counties are considered to be a class, such classification for the purpose of making pensions uniform in the state was a germane and proper classification for a public purpose. If it is constitutional to recognize cities of the first class on the theory their metropolitan problems deserve a special classification under a general law, it is just as constitutional to consider an act which, in effect, applies to 26 counties or almost one third of the counties of the state as being general when that law requires statewide conformity to a public purpose. A law including fewer counties was held a general and not a local law in *Collins v. Cowan* (1881), 52 Wis. 634, 9 N. W. 787. Likewise, we said in *Joint School Dist. v. Sosalla* (1958), 3 Wis. (2d) 410, 88 N. W. (2d) 357, in sustaining an act as a general law, the statute applies to any number of school districts and adjoining territory when the terms of the statute are met.

It is argued the class comprising the 26 counties is closed but this is so only because the application of ch. 459, Laws of 1961, now embraces all the existing counties of Wisconsin excepting Milwaukee county, which has its own pension plan. The concept of a closed class assumes there are other existing entities which are capable of meeting presently or in the

future the requirements of the classification and are not then included.

In view of our conclusion ch. 459, Laws of 1961, is a general or public act, sec. 18, art. IV of the Wisconsin constitution has no applicability, but if it were a local bill we would hold that it meets the requirements of the constitutional limitation. The act deals with only one subject, namely, pensions. Three phases of that subject, the mandatory inclusion of the counties, the option to select the basis for prior-service credits, and state aids to finance the Fund under certain conditions, all relate and are germane and included within the scope of the title of the act.[4] The title of a local law is not an index of its contents and should be liberally construed. Only where the title is so insufficient or defective as to not reasonably suggest the purpose of the act or what it covers, or where the reading of the act will disclose provisions clearly outside of its title, ought the act be held invalid. See *Phillips v. Town of Albany* (1871), 28 Wis. 340; *State ex rel. Williams v. Kaempfer* (1922), 176 Wis. 283, 187 N. W. 215; *State ex rel. Hammann v. Levitan* (1929), 200 Wis. 271, 228 N. W. 140; Ruud, No Law Shall Embrace More Than One Subject, 42 Minnesota Law Review (1958), 389; *Diana Shooting Club v. Lamoreux* (1902), 114 Wis. 44, 89 N. W. 880; *In re Southern Wisconsin Power Co.* (1909), 140 Wis. 245, 122 N. W. 801.

*Does Ch. 459, Laws of 1961, Violate Sec. 31, Art. IV, Wisconsin Constitution?*

The plaintiffs contend ch. 459, Laws of 1961, is a law for the assessment or collection of taxes and thereby violates

[4] The bill as finally enacted was entitled, "An Act to create 20.890 (5) and 66.902 (6) of the statutes, relating to the inclusion of and state aid to counties under the Wisconsin retirement fund and making an appropriation."

sec. 31, art. IV of the Wisconsin constitution [5] because it, in its application, imposes a tax and provides for the determination of the amount by the defendant and the payment thereof by an appropriation of state funds without the consent of the plaintiff counties. We do not find this argument convincing. Sec. 66.917 (1) (a), Stats., applicable to plaintiff counties as members of the Fund, is not a tax law but governs related activities of agencies of the state. It authorizes the department of administration to withhold moneys payable to a county and to pay to the Fund the amount of contribution which the county has failed to pay. It does not authorize, hinder, prohibit, or prevent the assessment or collection of taxes but, at the most, comes into operation, if at all and then only, upon the default of the county after the assessment or collection of taxes. Such an act affecting distribution is not a law for collection or assessment of taxes within the meaning of this constitutional limitation. *Whitefish Bay v. Milwaukee County, supra; State ex rel. Superior v. Donald* (1916), 163 Wis. 626, 158 N. W. 317. Furthermore, we have concluded that ch. 459 is a public law. This constitutional limitation is expressly limited to a special or private law and has no application.

*Uniformity Provisions of Sec. 1, Art. VIII, Wisconsin Constitution.*

We find no merit in the contention that because 26 counties are mandatorily subject to the pension system the legislature appropriates county funds (state aids and taxes which otherwise would be allocated and paid to the county) for the payment of county obligations, thus creating a special method

---

[5] "The legislature is prohibited from enacting any special or private laws in the following cases: . . . 6th. For assessment or collection of taxes or for extending the time for the collection thereof. . . ."

of collecting and returning taxes in contravention of sec. 1, art. VIII of the Wisconsin constitution.[5a] In the plaintiffs' reasoning, the state cannot appropriate until it gives or transfers unconditionally such funds to the county and, therefore, the procedure implies the allocated state aids or taxes are county funds which are applied to the county's obligation. The state, however, has complete control of its funds and can prescribe conditions upon which they are allocated to the county. The apportionment of state aids or taxes to various counties is subject to the plenary power of the legislature over municipal and quasi-municipal corporations to require such moneys to be used for certain purposes absolutely or under certain conditions. There are many instances where the legislature imposes new duties involving financial obligations upon counties without providing any appropriation therefor. This is done on the theory the county is a political subdivision or agency of the state. The procedure by which the state transfers state funds designated as state aids or taxes to the defendants to pay the contributions of a defaulting county does not create a special method of collecting or returning county taxes. The state aids and taxes allocated to a county are not collected or returned by the county by any method or in any sense contemplated by sec. 1, art. VIII. The plaintiff has overlooked the fact in his argument that the procedure under the pension system deals with the distribution of state aids and taxes and not with the assessment or collection of direct taxes on real estate only to which the uniformity requirement applies. *State ex rel. Van Dyke v. Cary* (1923), 181 Wis. 564, 191 N. W. 546; *Chicago & N. W. R. Co. v. State* (1906), 128 Wis. 553, 108 N. W. 557; *Nunnemacher v. State* (1906), 129 Wis. 190, 108 N. W. 627. Nor can we agree with the assumption

---

[5a] "The rule of taxation shall be uniform but the legislature may empower cities, villages, or towns to collect and return taxes on real estate located therein by optional methods."

implicit in the plaintiffs' argument the withholding by the state of aids and taxes to pay a county's obligation created by statute is collecting from or assessing a tax on the county.

*Sec. 26, Art. IV, Wisconsin Constitution.*

The plaintiffs contend ch. 459, Laws of 1961, constitutes a legislative grant of extra compensation to public officers, agents, or servants after their services have been rendered or in some cases after the contract was entered into and furthermore constitutes an increase in compensation of a public officer during his term of office. The Wisconsin constitution, sec. 26, art. IV,[6] does not apply to counties. *Sieb v. Racine* (1922), 176 Wis. 617, 187 N. W. 989; *Dandoy v. Milwaukee County* (1934), 214 Wis. 586, 254 N. W. 98. The theory on which the plaintiffs predicate their argument is that the mandatory subjection of the county to the Fund constitutes a prohibitive legislative grant and, consequently, when the plaintiffs are required to make contributions to the Fund they are not doing so voluntarily but under compulsion which, in effect, is the act of the legislature. Likewise, on the same premise, the provision for withholding state aids or taxes and paying the same over to the Fund in satisfaction of prior-service obligations of one of the 26 counties is, in effect, a legislative grant of extra compensation. In the same category the plaintiffs would place the payment of state aids to counties by way of reimbursement under sec. 66.902 (6) (b), Stats. These four contentions of the plaintiffs are grounded upon the proposition that the payment or withholding of state aids or the reimbursement by the state for contributions amounts to extra compensation by the state.

---

[6] "The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the service shall have been rendered or the contract entered into, nor the compensation of any public officer be increased or diminished during his term of office. . . ."

This contention was answered adversely to the plaintiffs in *State ex rel. Dudgeon v. Levitan, supra.* That case held prior-service credits granted to a teacher did not constitute extra compensation for past services but under the plan was to be considered an encouragement and an inducement to teachers to remain in public service. The plaintiffs ask us to overrule this case and criticize it on the ground the court stated the annuity based on past service was not intended to be or operate as compensation for past services. It is pointed out by the plaintiffs that since the *Dudgeon Case,* sec. 26, art. IV, Wis. Const., was amended to provide that the section did not apply to increased benefits for teachers. We see no merit in this argument. Increased pension benefits are to be distinguished from contributions for funding a pension. The plaintiffs also claim some doubt has been cast on *Dudgeon* because of our decisions in *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726, wherein a statute providing increased benefits for retired teachers was held unconstitutional on the ground it granted extra compensation, and in *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 61 N. W. (2d) 903, wherein a statute providing for increased benefits for retired teachers was valid for those teachers who held themselves available for future emergency service.

From these cases, it is reasoned some future service is necessary in consideration for the payment of past-service credits and, therefore, the *Dudgeon Case* cannot apply to the present facts because sec. 66.917 (3), Stats., provides the payment of earnings shall be a full and complete discharge of all claims for payment of services rendered by an employee during the period covered by such payment. The basic answer lies in the concept that contributions made to the pension fund are not compensation, much less extra compensation paid to public officers, agents, or servants. The payment of

contributions may ultimately under some conditions inure to the benefit of the employee in the form of a pension benefit but this is not absolute or necessarily so and does not amount to compensation as that term is used in sec. 26, art. IV of the constitution.

### *Does Ch. 459, Laws of 1961, Violate Sec. 3, Art. XI, Wisconsin Constitution?*

The plaintiff argues that ch. 459, Laws of 1961, is a legislative fiat imposing upon the 26 counties an absolute obligation to pay contributions based on past service and by virtue of sec. 66.905 (2) (a), Stats., to amortize this obligation over a period of forty years in violation of the constitutional provision which requires a county to discharge the principal of a debt within twenty years from the time of its creation. Sec. 3, art. XI, Wis. Const.,[7] applies to counties incurring an indebtedness by contractual means. The point of the plaintiff's argument is the legislature, in effect, contracted for the counties and imposed an absolute obligation of indebtedness upon them, dischargeable in forty years. Laying aside for the moment the manner in which the obligation was created, the solution of this argument is the meaning of the word "indebtedness" as used in the constitution. It is argued that any absolute obligation to pay money from funds to be provided meets the requirement of indebtedness, relying on *State ex rel. Owen v. Donald* (1915), 160 Wis. 21, 151 N. W. 331.

The nature of the county's obligation for the payment of contributions based upon past-service credits is such we can-

---

[7] ". . . Any county, . . . incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same; . . ."

not hold that it constitutes an indebtedness within the prohibition of this section of the constitution. At most, such obligation is a contingent liability. The amount of the obligation at any given time is not absolute. Farfetched as it may be, if all the employees of a county were discharged or terminated their employment prior to their respective retirement, the liability would cease to exist. The amount of the obligation to finance the pension involves so many variable factors that the obligation of a county must be redetermined each year on an actuarial basis in the light of changing contingencies. The amount deposited in a year or over the years by a county is not necessarily paid to the individual to whose account such payments are allocated and credited.

The obligation for past-service credits is not ascertainable for any period of time except for the convenience of making payments during a given year. The best that can be said is that the obligation is to pay some amount which varies. Such an obligation is distinctly different in nature from a bond issue or a contracted obligation whereby the obligor has received the consideration, the principal amount is certain, and is to be paid over a definite period of years, in stated amounts. It has been held the debt is not incurred until its amount is ascertainable for some constitutional purposes, *Janes v. Racine* (1913), 155 Wis. 1, 143 N. W. 707, and likewise interest on the bond issue, although ascertainable in the sense it will definitely accrue in amount and be payable in the definite future, is not to be considered in its total amount as an indebtedness of the municipality in any one year. *Herman v. Oconto* (1901), 110 Wis. 660, 86 N. W. 681. See also *Stedman v. Berlin* (1897), 97 Wis. 505, 73 N. W. 57.

The computations used by the plaintiffs for the amount of prior-service-credits contributions and called an absolute obligation are but book or audit figures only and do not

represent the total amount and, in fact, are and will be in excess of the actual payments by the county over the years. Even the obligation of the county based on the actuarial reports, while more accurate, does not represent the actual payments which will be required to meet the terms of the pension fund in operation. Thus the prior-service-credit obligation is uncertain and indefinite in amount and necessarily will continue to be so. The nature of such an obligation is not a debt within the meaning of sec. 3, art. XI, Wis. Const.

The word "debt," as used in constitutions of other states, does not include a contingent liability for the purpose of fixing a debt limit. *Fort Dodge Electric Light & Power Co. v. Fort Dodge* (1902), 115 Iowa 568, 89 N. W. 7; *State Budget Comm. v. Lebus* (1932), 244 Ky. 700, 51 S. W. (2d) 965. Nor is the sum payable upon a contingency such a debt until the contingency has happened. *Saleno v. Neosho* (1895), 127 Mo. 627, 30 S. W. 190. *Ward v. Big Spring* (Tex. Civ. App. 1942), 161 S. W. (2d) 821. A somewhat-analogous situation was considered by this court in *Meier v. Madison* (1950), 257 Wis. 174, 183, 42 N. W. (2d) 914, where this court said:

"Where a municipality contracts for annual services for a series of years, to be paid for by annual payments, such contract does not come within such a prohibition. 'In such case the whole amount which may ultimately become due does not constitute a debt, within the meaning of the constitution. To that end, regard is to be had only to the amount that may become due within a certain year or other period.' "

It is not material that the *quid pro quo* for the annual payments must be concurrently received. The basic idea was the payments by the municipality were conditioned by the performance of services. In this case, the county's obligation is

conditioned upon future contingencies which under the pension plan will affect the amount of the annual payments.

Moreover, the manner in which this obligation was created is not prohibited by the constitution. The constitutional limitation is upon a county incurring an indebtedness. This means an indebtedness voluntarily incurred by the county and not an obligation imposed upon the county by law. The word "incurring" would imply voluntary action by the county. The limitation does not refer to action by the legislature. A like construction was given to a similar provision of a state constitution in *Bessemer Investment Co. v. Chester* (D. C. Pa. 1938), 22 Fed. Supp. 311. Other courts have construed debt or indebtedness under constitutions to mean created by contract or by express agreement. *Levy v. McClellan* (1909), 196 N. Y. 178, 89 N. E. 569; *O'Bryan v. Owensboro* (1902), 113 Ky. 680, 68 S. W. 858. Even the plaintiff must agree the 26 counties have not voluntarily incurred this obligation or contracted it.

*Impairment of Contracts.*

The plaintiff's argument that the mandatory feature of ch. 459, Laws of 1961, impairs the obligation-of-the-contract prohibition in the federal and Wisconsin constitutions [8] is based upon the premise contributions to the Fund are additional compensation for services which have been rendered and paid for in full or currently increases the amount of compensation of existing contracts for future services. It is also contended the withholding of contributions of the employees without their express consent constitutes a violation of constitutional provisions and existing contracts with employees which inured to the benefit of the taxpayer as a third-party

[8] Sec. 10, art. I, U. S. Const., provides: "No state shall . . . pass any bill . . . or law impairing the obligation of contracts, . . ."

Sec. 12, art. I, Wis. Const., provides: "No . . . law impairing the obligation of contracts shall ever be passed, . . ."

beneficiary. This argument is neither manifest nor ineluctable.

From the standpoint of the counties, they have no privilege or immunities under the federal constitution which may be invoked against state legislation. *Worcester v. Worcester Consolidated Street R. Co.* (1905), 196 U. S. 539, 25 Sup. Ct. 327, 49 L. Ed. 591; *Trenton v. New Jersey* (1923), 262 U. S. 182, 43 Sup. Ct. 534, 67 L. Ed. 937; *Williams v. Mayor of Baltimore* (1933), 289 U. S. 36, 53 Sup. Ct. 431, 77 L. Ed. 1015. Nor can an agency of the state raise the unconstitutionality of a state law under the state constitution against the state or one of its agencies. *Madison Metropolitan Sewerage Dist. v. Committee, supra.* See also *State ex rel. Martin v. Juneau, supra.* From the standpoint of county officers and employees, they do not hold their offices or positions by virtue of a contract. For this point, see *Dandoy v. Milwaukee County, supra.* Contracts made by the county with third persons for government purposes can be questioned on constitutional grounds only by the third party. *Frederick v. Douglas County* (1897), 96 Wis. 411, 71 N. W. 798; *Milwaukee v. Milwaukee & S. T. Corp.* (1959), 6 Wis. (2d) 299, 94 N. W. (2d) 584.

No county employee here is questioning the impairment of any of his rights, but the plaintiff taxpayer seeks to do so on the theory that taxpayers are third-party beneficiaries of such contracts so far as it concerns the right to services of the employees to be rendered at the specified contract compensation. This is an ingenious argument and if carried to its logical conclusion would allow any taxpayer to contest the modification or change in any contract between a municipality and a third person. Such contracts, when they do exist, are not third-party-beneficiary contracts for taxpayers with-

in the doctrine of *Tweeddale v. Tweeddale* (1903), 116 Wis. 517, 93 N. W. 440.

*By the Court.*—Ch. 459, Laws of 1961, is hereby declared constitutional.

WILKIE, J., took no part.