State of Wisconsin PUBLIC INTERVENOR,
Petitioner-Appellant and Cross-Respondent,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES and
Natural Resources Board, Respondents and Cross-
Appellants.

Supreme Court

*No. 82–111.  Argued September 7, 1983.—
Decided November 1, 1983.*

(Also reported in 339 N.W.2d 324.)

For the petitioner-appellant and cross-respondent there were briefs by *Thomas J. Dawson,* Wisconsin Public Intervenor, and oral argument by *Mr. Dawson.*

For the respondents and cross-appellants the cause was argued by *Raymond M. Roder,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

STEINMETZ, J. The issue is whether the public intervenor, a legislatively created entity, has standing to challenge the constitutionality of an administrative code, ch. NR 345, Wis. Adm. Code, promulgated pursuant to sec. 30.20, Stats.[1]

---

[1] Sec. 30.20 (2) (c), Stats., provides:

"(c) A permit to remove material from the bed of any lake or stream not included in sub. (1) (a) may be issued by the department if it finds that the issuance of such a permit will be consistent with the public interest in the water involved. The department may adopt rules to enable it to administer this section."

The Dane county circuit court, the Honorable Richard W. Bardwell, held the public intervenor had such standing but held ch. NR 345, Wis. Adm. Code, constitutional. The public intervenor appealed only the part of the trial court decision that declared the code constitutional, and this court accepted certification from the court of appeals.

This is an action brought under sec. 227.05, Stats.,[2] by the State of Wisconsin public intervenor, petitioner-appellant-cross-respondent, to challenge a rule adopted by the Wisconsin Department of Natural Resources (DNR) and the Natural Resources Board (NRB) pursuant to sec. 30.20.

The sequence of events leading to this litigation began on January 21, 1980, when the public intervenor received from the respondents, DNR and NRB, a notice of public hearings to consider the creation of ch. NR 345, Wis. Adm. Code, which pertains to the removal of material from the beds of waterways. On February 11, 1980, pursuant to sec. 30.20, Stats., the DNR held a public hearing to receive oral and written comments on ch. NR 345. At

_____

[2] Sec. 227.05(1), Stats., provides:

"227.05 **Declaratory judgment proceedings.** (1) Except as provided in sub. (2), the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane county. The officer, board, commission or other agency whose rule is involved shall be the party defendant. The summons in such action shall be served as provided in s. 801.11(3) and by delivering a copy to such officer or to the secretary or clerk of the agency where composed of more than one person or to any member of such agency. The court shall render a declaratory judgment in such action only when it appears from the complaint and the supporting evidence that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, the legal rights and privileges of the plaintiff. A declaratory judgment may be rendered whether or not the plaintiff has first requested the agency to pass upon the validity of the rule in question."

the hearing, the public intervenor was given the opportunity to submit written testimony and present oral comments pertinent to his viewpoint. The public intervenor urged the NRB to provide "notice and opportunity to be heard" in ch. NR 345, with respect to permit proceedings under sec. 30.20 for the public intervenor specifically and the public generally.

During the week of March 16, 1980, an agenda was issued for the NRB meetings of March 26 through March 28, 1980, during which the adoption of ch. NR 345, Wis. Adm. Code would be reconsidered. In response, the public intervenor, on March 21, 1980, submitted a "Written Presentation of the Public Intervenor." On March 24, 1980, he submitted a formal notice and statement of intervention in the matter; on March 26, 1980, the public intervenor appeared before the NRB Environmental Quality Committee to submit written testimony and another oral presentation. In each of these instances, the public intervenor was given the opportunity to present his particular views as to the proposed ch. NR 345, and in each instance, the public intervenor urged that provisions giving "notice and opportunity to be heard" to the public intervenor and the public for sec. 30.20, Stats., permit proceedings be included in ch. NR 345.

On March 27, 1980, the NRB made the determination to adopt ch. NR 345, Wis. Adm. Code, without the public intervenor's proposed amendments. Ch. NR 345 then went to the standing committees of the Wisconsin legislature for review pursuant to the provisions of sec. 227.018(1)(a) and (b), Stats., created by ch. 34, Laws of 1979.[3]

---

[3] Sec. 227.018(1)(a) and (b), Stats., provides:

"227.018 **Committee review of proposed rules.** (1) STATEMENT OF PURPOSE; RULE-MAKING POWERS. (a) Article IV of the constitution vests in the legislature the power to make laws, and thereby to establish agencies and to designate agency functions,

On April 28, 1980, the public intervenor filed a petition to review under secs. 227.15 and 227.16, Stats. In response, the DNR filed a motion to dismiss. The trial court denied the DNR's motion to dismiss and permitted the public intervenor to amend his petition to seek a declaration under sec. 227.05, of the rule's validity. From this portion of the trial court's decision, the DNR and NRB now appeal.

In the petition for review and declaratory judgment, the public intervenor contended that ch. NR 345, Wis. Adm. Code, improperly fails to give notice and an opportunity for a hearing to the public and to the public intervenor in sec. 30.20(2)(c), Stats., permit proceedings, and requested the court to issue an order:

"(a) Declaring chapter NR 345 Wis. Adm. Code invalid; and

"(b) Remanding the matter to respondents with instructions to adopt and amend chapter NR 345 Wis. Adm. Code to provide to petitioner and the public notice and

---

budgets and purposes. Article V of the constitution charges the executive with the responsibility to expedite all measures which may be resolved upon by the legislature.

"(b) The legislature recognizes the need for efficient administration of public policy. In creating agencies and designating their functions and purposes, the legislature may deem it necessary to delegate rule-making authority to these agencies to facilitate administration of legislative policy. The delegation of such rule-making authority is intended to eliminate the necessity of establishing every administrative aspect of general public policy by legislation. In so doing, however, the legislature reserves unto itself:

"1. The right to retract any such delegation of rule-making authority;

"2. The right to establish any aspect of general policy by legislation, notwithstanding any delegation of rule-making authority;

"3. The right and responsibility to designate methods of rule promulgation and rule review and modification; and

"4. The right to delay or suspend the implementation of any rule or proposed rule while under review by the legislature."

opportunity for hearing in sec. 30.20, Stats., permit proceedings; and

"(c) Enjoining the respondents from granting any permits under sec. 30.20, Stats., until respondents amend and adopt chapter NR 345 Wis. Adm. Code to provide public notice and opportunity for hearing in sec. 30.20, Stats., permit proceedings; and

"(d) For such other relief that is appropriate."

The circuit court found that the public intervenor had standing to challenge the validity of the administrative rule. However, on December 11, 1981, the circuit court entered its judgment that ch. NR 345, Wis. Adm. Code, is a valid exercise of the DNR's rulemaking authority under sec. 30.20(2)(c), Stats.

The basic authority for the promulgation of ch. NR 345, Wis. Adm. Code, which deals with the removal of material from the beds of nonoutlying lakes and streams, is found in sec. 30.20(2)(c), Stats., which reads: "A permit to remove material from the bed of any lake or stream not included in sub. (1)(a) may be issued by the department if it finds that the issuance of such a permit will be consistent with the public interest in the water involved."

Sec. 165.07, Stats.,[4] provides: "Written notices of all proceedings under chs. 30, 31, 144 and 147 shall be given

---

[4] Sec. 165.07, Stats., provides:

"**165.07 Assistant attorney general—public intervenor.** The attorney general shall designate an assistant attorney general on his staff as public intervenor. Written notices of all proceedings under chs. 30, 31, 144 and 147 shall be given to the public intervenor and to the administrators of divisions primarily assigned the departmental functions under chs. 29 and 144 by the agency head responsible for such proceedings. A copy of such notice shall also be given to the scientific areas preservation council. The public intervenor shall formally intervene in such proceedings when requested to do so by an administrator of a division primarily assigned the departmental functions under ch. 29 or 144. The public intervenor may, on his own initiative or upon

to the public intervenor . . . ." It is made clear by this provision that the public intervenor is to receive notices of removal permits under sec. 30.20(2)(c), and the state concedes this to be required even though it has not been the practice of the DNR to give such notices to the public intervenor except in very limited permit matters.

Sec. 165.07, Stats., the enabling legislation for the public intervenor, states that he may "formally intervene in all such proceedings [in chs. 30, 31, 144 and 147] where such intervention is needed for the protection of 'public rights' in water and other natural resources, as provided in chs. 30 and 31 and defined by the supreme court . . . He may appeal from administrative rulings to the courts . . . ." This legislation gives the public intervenor the right only to intervene in proceedings. He is not given the full scope of authority to either initiate an action or

request of any committee of the legislature, formally intervene in all such proceedings where such intervention is needed for the protection of 'public rights' in water and other natural resources, as provided in chs. 30 and 31 and defined by the supreme court. Personnel of the department of natural resources shall upon the request of the public intervenor make such investigations, studies and reports as he may request in connection with such proceedings, either before or after formal intervention. Personnel of state agencies shall at his request provide information, serve as witnesses in such proceedings and otherwise cooperate in the carrying out of his intervention functions. Formal intervention shall be by filing a statement to that effect with the examiner or other person immediately in charge of the proceeding. Thereupon the public intervenor shall be deemed a party in interest with full power to present evidence, subpoena and cross-examine witnesses, submit proof, file briefs or do any other acts appropriate for a party to the proceedings. He may appeal from administrative rulings to the courts and in all administrative proceedings and judicial review proceedings he shall be identified as 'public intervenor'. This section does not preclude or prevent any division of the department of natural resources, or any other department or independent agency from appearing by its staff as a party in such proceedings."

to challenge a rule. All that the statute authorizes him to do is to intervene in proceedings and to appeal from administrative rulings in those proceedings.

*Wisconsin's Environmental Decade, Inc. v. PSC,* 69 Wis. 2d 1, 10, 230 N.W.2d 243 (1975) held:

"The Wisconsin rule of standing envisions a two-step analysis conceptually similar to the analysis required by the federal rule. The first step under the Wisconsin rule is to ascertain whether the decision of the agency directly causes injury to the interest of the petitioner. The second step is to determine whether the interest asserted is recognized by law. . . . (1) Does the challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question?"

Under the first step, petitioner is not injured by DNR's promulgation of NR 345, Wis. Adm. Code, since the public intervenor is already authorized to receive notice of all sec. 30.20, Stats., permit proceedings under sec. 165.07. There is no injury in fact to the public intervenor if a separate notice is not provided by ch. NR 345. Therefore, the first step of the standing test was not met.

Wisconsin has specifically limited the powers and duties of the attorney general. Wisconsin Constitution art. VI sec. 3 limits the powers and duties to those "prescribed by law."

"The attorney general is devoid of the inherent power to initiate and prosecute litigation intended to protect or promote the interests of the state or its citizens and cannot act for the state as *parens patriae* . . . Such power must be specifically granted by the legislature. Unless the power to prosecute a specific action is granted by law, the office of the attorney general is

powerless to act." *Estate of Sharp*, 63 Wis. 2d 254, 261, 217 N.W.2d 258 (1974).

In *Sharp*, the court held that the attorney general did not have the power to intervene in estate proceedings, because he had not been granted that power by the legislature. Hence, he could not be considered an interested party. *Id.* at 263. The attorney general therefore had no standing in the litigation. A particular assistant attorney general, the public intervenor, logically is limited to his statutory authority as an assistant attorney general, unless the legislature clearly stated otherwise.

The duties of the department of justice are set forth in sec. 165.25, Stats.,[5] and include "representing the state" and in sec. 165.07, the public intervenor may "intervene" to protect public rights in water. Nowhere is there a statutory provision giving the attorney general or his assistants the power to challenge the constitutionality of a law or rule of this state or one of its agencies. *City of Eau Claire v. Department of Natural*

---

[5] Sec. 165.25(1), Stats., provides:

"**165.25 Duties of department of justice.** The department of justice shall:

"(1) REPRESENT STATE. Except as provided in s. 59.47(7), appear for the state and prosecute or defend all actions and proceedings, civil or criminal, in the court of appeals and the supreme court, in which the state is interested or a party, and attend to and prosecute or defend all civil cases sent or remanded to any circuit court in which the state is a party; and, if requested by the governor, either branch of the legislature or the radioactive waste review board under s. 16.08(7), appear for the state and prosecute or defend in any court or before any officer, any cause or matter, civil or criminal, in which the state or the people of this state may be interested. All expenses of the proceedings shall be paid from the appropriation under s. 20.455(1)(d).

"(2) . . .

". . . .

"(9) . . ."

*Resources,* 60 Wis. 2d 751, 210 N.W.2d 771 (1973). To the contrary, it is the attorney general's duty to defend the constitutionality of state statutes.

The public intervenor also relies for standing on the public trust doctrine and cites *Muench v. Public Service Comm.,* 261 Wis. 492, 53 N.W.2d 514 (1952) for that proposition. The issue in *Muench* was whether a private citizen has standing to participate as a party in a hearing which was provided by secs. 31.06 and 31.28, Stats. The attorney general intervened to support the plaintiff. The *Muench* case does not hold that standing derives from a substantive right apart from a statutorily created right. The issue in the instant case is not whether a member of the public can raise an issue of public rights in a statutorily mandated hearing, but whether the "public trust doctrine" confers an affirmative right of action upon the public intervenor. An historical development of the public trust doctrine can be found in the *Muench* case.

The public intervenor claims that *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974), stands for the proposition that the public trust doctrine gives the state standing to vindicate rights infringed upon by existing law. As we stated in *Deetz* at 12:

"The public trust doctrine, as it is utilized by various states which have adopted that or some similar theory, is thoroughly discussed by Joseph L. Sax, *The Public Trust Doctrine In Natural Resource Law: Effective Judicial Intervention,* 68 Michigan Law Rev. (1970), 471. He concludes that the public trust doctrine may be used as a tool for citizens for enforcement of the public's rights against government itself, as indeed it was used in *Muench* to challenge the state's delegation of its duty as a trustee. Sax writes:

"'. . . public trust law is not so much a substantive set of standards for dealing with the public domain as it is a technique by which courts may mend perceived im-

perfections in the legislative and administrative process.' (P. 509)

"Sax discusses numerous cases wherein the doctrine has been used by the courts to protect the public trust against state action. In one of his conclusions, he points out:

" 'The "public trust" has no life of its own and no intrinsic content. It is no more—and no less—than a name courts give to their concerns about the insufficiencies of the democratic process.' (P. 521)"

Additionally in *Deetz* at 13, the court stated: "The public trust doctrine merely establishes standing for the state, or any person suing in the name of the state for the purpose of vindicating the public trust, to assert a cause of action recognized by the existing law of Wisconsin." The public intervenor is not the state, but is an office created by the legislature with stated and limited authority to intervene in proceedings. He does not have authority to bring direct court actions challenging the constitutionality of rules adopted by the DNR, an agency created also by the legislature.

In *Wis. Environmental Decade, Inc. v. DNR*, 85 Wis. 2d 518, 527–28, 271 N.W.2d 69 (1978), we stated:

"In furtherance of the state's affirmative obligations as trustee of navigable waters, the legislature has delegated substantial authority over water management matters to the DNR. The duties of the DNR are comprehensive, and its role in protecting state waters is clearly dominant. Relevant language of sec. 144.025, Stats., is as follows:

" '*Department of natural resources—water resources.* (1) STATEMENT OF POLICY AND PURPOSE. The department of natural resources shall serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state, ground and surface, public and private. Continued pollution of the waters of the state has aroused widespread public concern. It endangers public health and threatens the general welfare. A comprehensive action

program directed at all present and potential sources of water pollution whether home, farm, recreational, municipal, industrial or commercial is needed to protect human life and health, fish and aquatic life, scenic and ecological values and domestic, municipal, recreational, industrial, agricultural and other uses of water. The purpose of this act is to grant necessary powers and to organize a comprehensive program under a single state agency for the enhancement of the quality management and protection of all waters of the state, ground and surface, public and private. To the end that these vital purposes may be accomplished, this act and all rules and orders promulgated pursuant thereto shall be liberally construed in favor of the policy objectives set forth in this act. . . .

" '(2) POWERS AND DUTIES. (a) The department shall have general supervision and control over the waters of the state. It shall formulate no later than July 1, 1968, a long-range, comprehensive state water resources plan for each region, as fixed by the department under sub. (4), to guide the development, management and protection of water resources. Such plan shall thereafter be carried out by the department . . . The department also shall formulate plans and programs for the prevention and abatement of water pollution and for the maintenance and improvement of water quality.' " (Footnote omitted.)

Sec. 165.07, Stats., which creates the public intervenor, does not make that office the superior of the DNR. The DNR, in carrying out its duties, is dominant in its role in protecting state waters. The public intervenor has no standing to seek a declaratory judgment seeking to declare ch. NR 345, Wis. Adm. Code, as unconstitutional.

We stated in *City of Madison v. Town of Fitchburg*, 112 Wis. 2d 224, 230, 332 N.W.2d 782 (1983) : "Indeed we have recently recognized that even a trifling interest may be sufficient to confer standing. *State ex rel. First National Bank v. M & I Peoples Bank,* 95 Wis. 2d 303,

309, 290 N.W.2d 321 (1980)." However, for the public intervenor to challenge the constitutionality of this administrative rule, he must have standing conferred from his statutory creation and authority. That source does not provide him any such authority or interest. He is without authority in that regard and it is not a question of the degree to which his authority rises.

"Standing on the threshold of the constitutional issues is the question whether the plaintiffs have the legal capacity to sue and the right to contest the constitutionality of ch. 459, Laws of 1961." *Columbia County v. Wisconsin Retirement Fund,* 17 Wis. 2d 310, 316, 116 N.W.2d 142 (1962).

The tenor of the dissenting opinion could be "wishing will make it so." It reads sec. 165.07, Stats., as stating "initiate" rather than "intervene," the word chosen by the legislature. It also abuses the word "proceedings" chosen by the legislature by converting it into "action." The acts the public intervenor may participate in are interventions or "other acts appropriate for a party to the proceedings."

Sec. 165.07, Stats., selectively states the public intervenor may get to court on "appeal from administrative rulings." The public intervenor may on request have the services of personnel of state agencies to "provide information, serve as witnesses in such proceedings and otherwise cooperate in the carrying out of his *intervention* functions." (Emphasis added.) "Proceedings" referred to are those in chs. 30, 31, 144 and 147 and not court proceedings.

The dissent would place the office of public intervenor as an equal agency to the DNR or other state agencies by having equal power through initiation of actions against agency decisions. If the office can seek declaratory judgments, it can seek injunctive relief against

administrative actions. The legislature did not so empower the office of public intervenor and if it had, the budget for staff, experts and investigative forces would have to equal that of the already established agencies of the state.

While the history of the office of public intervenor may be as stated that conservation groups feared the abolition of the conservation commission and sought the office of public intervenor to check agencies, the legislature chose in sec. 165.07, Stats., to have the public intervenor represent the "public," not one interest group. While the interests of a special group in society and the public may usually be united, it does not follow that it will always be thus.

The legislature has already created the DNR to represent the public in guarding our state's resources and placed a check on fears of bureaucracy by requiring the agency's administrative rules to be approved by appropriate legislative committees, which occurred in this case.

The public intervenor under the enabling statute does not have the legal capacity to seek a declaratory judgment against the Wisconsin Department of Natural Resources nor the Natural Resources Board for a determination of the constitutionality of ch. NR 345, Wis. Adm. Code.

Since we find the public intervenor does not have standing to contest the adoption by the DNR of ch. NR 345, Wis. Adm. Code, we do not reach the challenge made to ch. NR 345.

*By the Court.*—The judgment of the circuit court for Dane county is modified and as modified, affirmed.

WILLIAM A. BABLITCH, J. *(dissenting).* I dissent. The majority opinion holds that the public intervenor does not have standing to seek judicial review of a rule adopted by the DNR. This conclusion ignores the clear

and unequivocal language and intent of sec. 165.07, Stats., ignores the legislative history behind the creation of the public intervenor, and leads to a result that the legislature could not have intended.

The Wisconsin rule of standing requires a two-step analysis: first, a determination whether there is direct injury to an interest of the petitioner; second, a determination whether that interest is recognized by statute or the constitution.

The majority opinion is unclear whether its conclusion that the public intervenor lacks standing is based on (1) section 165.07, Stats.; or (2) that the public intervenor has suffered no injury in fact; or (3) that the injured interest is not one protected by statute or constitution; or (4) that the public intervenor cannot challenge the constitutionality of an administrative rule; or (5) a combination of the above. Having considered each of these factors, I conclude that the public intervenor does have standing.

1. THE PUBLIC INTERVENOR HAS STANDING UNDER SEC. 165.07, STATS.

Under sec. 165.07, Stats., the public intervenor has standing to intervene in a DNR administrative proceeding to adopt a rule under ch. 30, and has standing to initiate a declaratory judgment action under sec. 227.05 to challenge the validity of the administrative rule that was adopted. Section 165.07 provides:

"165.07 **Assistant attorney general—public intervenor.** The attorney general shall designate an assistant attorney general on his staff as public intervenor. Written notices of all proceedings under chs. 30, 31, 144 and 147 shall be given to the public intervenor and to the administrators of divisions primarily assigned the departmental functions under chs. 29 and 144 by the agency head responsible for such proceedings. A copy of such notice shall also be given to the scientific areas

preservation council. The public intervenor shall formally intervene in such proceedings when requested to do so by an administrator of a division primarily assigned the departmental functions under ch. 29 or 144. The public intervenor may, on his own initiative or upon request of any committee of the legislature, formally intervene in all such proceedings where such intervention is needed for the protection of 'public rights' in water and other natural resources, as provided in chs. 30 and 31 and defined by the supreme court. Personnel of the department of natural resources shall upon the request of the public intervenor make such investigations, studies and reports as he may request in connection with such proceedings, either before or after formal intervention. Personnel of state agencies shall at his request provide information, serve as witnesses in such proceedings and otherwise cooperate in the carrying out of his intervention functions. Formal intervention shall be by filing a statement to that effect with the examiner or other person immediately in charge of the proceeding. Thereupon the public intervenor shall be deemed a party in interest with full power to present evidence, subpoena and cross-examine witnesses, submit proof, file briefs or do any other acts appropriate for a party to the proceedings. He may appeal from administrative rulings to the courts and in all administrative proceedings and judicial review proceedings he shall be identified as 'public intervenor'. This section does not preclude or prevent any division of the department of natural resources, or any other department or independent agency from appearing by its staff as a party in such proceedings."

The majority asserts that although sec. 165.07, Stats., gives the public intervenor the right to intervene in proceedings, he was not given the authority to initiate a declaratory judgment action to challenge an administrative rule. *See supra* at 34. The majority cites no authority for this conclusion and has none. The majority does not challenge the public intervenor's right to intervene in a ch. 30 rule-making proceeding. The public intervenor did intervene in this case. Section 165.07 provides that

upon formal intervention in ch. 30 proceedings, the public intervenor may do ". . . other acts appropriate for a party to the proceedings. . . ." Such other appropriate acts include declaratory judgment actions. Section 165.07 authorizes the public intervenor to file a notice and statement of intervention in a ch. 30 rule-making procedure and to seek judicial review of an adverse decision in the rule-making procedure. The public intervenor did intervene and did seek review.

## 2. THE PUBLIC INTERVENOR HAS SUFFERED INJURY IN FACT.

The majority states there is no injury in fact because the public intervenor is already authorized to receive notice of all sec. 30.20, Stats., permit proceedings. Under the majority's holding, however, that authorization is rendered meaningless. Even if the public intervenor received all such notices,[1] including those under proposed Wis. Adm. Code Sec. NR 345, the injury remains because without the right to a hearing, the public intervenor has no effective way to challenge the noticed actions. Without the right to a hearing, the public intervenor is effectively hamstrung in carrying out his duty to challenge a permit issued pursuant to sec. 30.20 that he deems will adversely affect the public rights in water.

## 3. THE INJURED INTEREST IS ONE PROTECTED BY STATUTE.

The second step in establishing standing involves a determination whether the injured interest is one protected by statute or the constitution. The language found

---

[1] At oral argument, the state conceded the public intervenor's right to receive notice of all chapter 30 permit proceedings. The state did not contest the public intervenor's assertion that of 188 sec. 30.20, Stats., permit proceedings thus far in 1983, he had received notice of only 3.

in sec. 165.07, Stats., could hardly be more protective in that it allows the public intervenor to intervene in *"all proceedings"* where he deems such intervention is needed for the protection of public waters. It is hard to imagine clearer language evincing a legislative intent that the public intervenor have the authority to intervene in all proceedings when he deems such intervention is needed for the protection of public rights in water and other natural resources.

4. THE PUBLIC INTERVENOR HAS THE AUTHORITY TO CHALLENGE THE CONSTITUTIONALITY OF AN ADMINISTRATIVE RULE.

I also conclude that although the public intervenor is a legislatively-created entity, he can challenge the constitutionality of the legislative enactment. In Wisconsin, the general rule is that "an arm of the state has no right to question the constitutionality of the acts of its superior and creator or of another arm of governmental agency of the state." *Columbia County v. Wisconsin Retirement Fund,* 17 Wis. 2d 310, 317, 116 N.W.2d 142 (1962). We have, however, recognized an exception to the general rule. A state agency or public officer may challenge the constitutionality of a legislative enactment if it is the agency's official duty to do so. *See* 17 Wis. 2d at 318. This exception applies in this case.

The public intervenor seeks to challenge the constitutionality of NR 345 on the grounds that the rule denies the public due process and equal protection of the law because it does not provide the public or public intervenor with notice and a hearing in sec. 30.20, Stats., permit proceedings. Without notice and a hearing, the public rights in water could be impaired. The public intervenor's constitutional challenge is therefore aimed at protecting the public's rights in state waters.

As previously noted, sec. 165.07, Stats., imposes a duty on the public intervenor to intervene in proceedings when necessary to protect public rights in water and other natural resources. If a proceeding involves the adoption of an administrative rule that allegedly violates the public's constitutional rights, and those rights involve the public's rights in water, the public intervenor's duty to intervene under sec. 165.07 necessarily encompasses the duty to challenge the constitutionality of that rule if such action is necessary to protect the public rights in water. The public intervenor therefore has standing to challenge the constitutionality of NR 345.

5. THE PUBLIC INTERVENOR WAS CREATED PRECISELY TO FULFILL AN ADVERSARY PURPOSE.

The decision in this case also ignores the legislative history behind the creation of the official of the public intervenor. *See The Public Intervenor in Wisconsin*, A Report Prepared For The Wisconsin State Department Of Administration By The Center For Public Representation, Inc. (November 14, 1975). Its genesis was the reorganization of the state's administrative agencies, boards and councils in the late 60's. It involved very lengthy and at times very bitter proceedings and debates, including marches in Madison by conservation groups protesting the merger of the Conservation Commission and the Resource Development Board into one agency: the DNR. The concern of the supporters of the Conservation Commission was that conservation interests and resource development interests did not belong together because both would inevitably collide if the supporters of both interests were doing their respective jobs. *Id.* at 6. The obvious concern was that "conservation" and "resource development" were distinct interests that

would at times conflict. The final compromise was the creation of the public intervenor to protect the adversary process that the Conservation Commission had relied upon prior to the merger in court and in its hearings before the PSC.

Thus, the sole basis for the creation of the public intervenor was to create an adversarial force independent of the newly created DNR. That concept is seriously undermined by the majority's holding in this case, and certainly destroyed with respect to challenging an administrative rule.

Last, and perhaps most important, the majority's construction of sec. 165.07, Stats., as prohibiting the public intervenor from seeking judicial review leads to a result that the legislature could not have intended. Statutes must be construed to avoid absurd or unreasonable results. *State v. Clausen*, 105 Wis. 2d 231, 245, 313 N.W. 2d 819 (1982).

The legislature could not have intended to provide the public intervenor with a duty to protect the public interest without the right to challenge an administrative rule that could cause irreversible damage to public rights in state waters. That an administrative rule has the potential to cause irreparable harm to the public's interest in water is obvious. The majority's decision, however, renders the public intervenor powerless to challenge such a rule and to fulfill the legislative mandate of sec. 165.07, Stats.

Because the majority opinion concluded that the public intervenor did not have standing to challenge the constitutionality of NR 345, it did not reach the question of the constitutionality of that rule, and I therefore do not address that issue.

I am authorized to state that JUSTICE SHIRLEY S. ABRAHAMSON joins in this dissent.