ASSOCIATION OF STATE PROSECUTORS, on behalf of its members, and David A. Feiss, Petitioners-Respondents,

v.

MILWAUKEE COUNTY and the Milwaukee County Pension Board, Respondents-Appellants.†

Court of Appeals

*No. 93–3329. Submitted on briefs October 24, 1994.—Decided November 15, 1994.*

(Also reported in 525 N.W.2d 768.)

†Petition to review granted.

On behalf of the respondents-appellants, the cause was submitted on the briefs of *Anne Willis Reed* and *Dean E. Mabie* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee, and *Timothy R. Schoewe*, office of corporation counsel, of Milwaukee.

For the petitioners-respondents, the cause was submitted on the brief of *Jeffrey P. Sweetland* of *Schneidman, Myers, Dowling & Blumenfield* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Milwaukee County and the Milwaukee County Pension Board (collectively Milwaukee County) appeal a peremptory writ of mandamus. The trial court concluded that Milwaukee County had a duty under § 978.12(5)(c)5, Stats.,[1] to transfer pension funds on behalf of petitioner Feiss and class members from the Milwaukee County Employee Retirement System (County Plan) to the Wisconsin Retirement System (State Plan). Milwaukee County contends that the trial court erred by: (1) determining that the contributions were made to the County Plan "on behalf of" petitioners; therefore, the transfer of such contribu-

---

[1] Section § 978.12(5)(c)5, Stats., provides in full:

Notwithstanding any other provisions of the retirement system established under chapter 201, laws of 1937, if a district attorney or state employe of the office of district attorney in a county having a population of 500,000 or more who does not have vested benefit rights under the retirement system established under chapter 201, laws of 1937, becomes a participating employe under the Wisconsin retirement system under ch. 40 as provided in this subsection, the participating employe may, on a form developed by the department of employe trust funds in consultation with that county, elect to transfer from the retirement system established under chapter 201, laws of 1937, an amount equal to all employer contributions made on his or her behalf, not including any employer contributions for unfunded prior service liability made on the basis of his or her earnings, to the retirement system established under chapter 201, laws of 1937, together with all interest actually accrued on those contributions, to the employer required contribution account provided for by s. 40.05 (2). An election under this subdivision constitutes a full and complete waiver of any right to any benefit from the retirement system established under chapter 201, laws of 1937, for any benefit accrued or service rendered under that retirement system prior to the election. Any provision in the retirement system established under chapter 201, laws of 1937, for repurchasing benefits or service forfeited shall not apply to the benefits and service transferred under this subdivision.

tions according to the trial court is possible to calculate; (2) Milwaukee County did not have a positive duty to transfer employer contributions; and (3) the statute is unconstitutional. Because we conclude that transferring contributions on behalf of the petitioners is feasible, Milwaukee County has a plain and positive duty to do so, and § 978.12(5)(c)5 is constitutional, we affirm the trial court.

## BACKGROUND

The focus of this action involves two different retirement systems, the State and County Plans. The parties base their statements of the case on the legislative history of the statutes and ordinances involving the two pension plans, as well as the trial court record. Prior to January 1, 1990, employees in district attorneys offices throughout Wisconsin were employees of their respective counties. Thus, assistant district attorneys in the Milwaukee County Office of District Attorney (hereinafter MCADA's) were employees of Milwaukee County. The MCADA's were eligible for membership in the County Plan, which the state legislature created pursuant to ch. 201 of the Laws of 1937. The MCADA's were not eligible to participate in the State Plan, pursuant to § 40.21, STATS., because Milwaukee County never elected to participate in this plan. Further, Milwaukee County was the only county in Wisconsin that did not elect to join the State Plan.

As of January 1, 1990, all district attorneys became state officers or employees. All MCADA's were given the option to remain in the County Plan or to transfer to the State Plan. When the transfer of the MCADA's to the State Plan took effect, none of those who had been hired after January 1, 1982, had sufficient time in the County Plan to be vested. The non-

vested MCADA's were thus subject to an anomaly because the State Plan did not give them credit for their time as county employees. To place the MCADA's in an equal position with all other assistant district attorneys, the legislature enacted § 333c of 1989 Wis. Act 336, creating § 978.12(5)(c)5, STATS. Pursuant to § 978.12(5)(c)5, a participating, non-vested MCADA could elect to transfer employer contributions made on his or her behalf, along with the interest accrued, from the County Plan to the State Plan. The companion statute, § 40.02(17)(g), STATS.,[2] provided that the MCADA's would receive service credit for county employment in an amount dependent upon the dollar amount transferred, determined by an actuary.

By July 1991, approximately forty-two MCADA's, who were non-vested in the County Plan, elected to have Milwaukee County contributions made on their behalf transferred to the State Plan. In response, Milwaukee County contended that contributions to its plan were not allocated to individuals and thus it was unable to make this transfer.

The County Plan is a defined benefit plan, in which its members are assured they will receive a retirement benefit calculated as a percentage of their final average salary multiplied by their years of county service. Actuaries make projections such as plan participation, future employee salary increases, the ages at which participants are expected to retire and economic

---

[2] Section 40.02(17)(g), STATS., states:

> Any participating employe for whom employer required contributions have been made under s. 978.12(5)(c)5 shall be granted the maximum amount of creditable service that the board, on the recommendation of the actuary, determines can be fully funded by such contributions, not to exceed the total period of service under the retirement system established under chapter 201, laws of 1937, for which such contributions have been made.

assumptions. Actuaries then examine the covered employees to ascertain the cost of the plan. They examine dates of birth, employment and salary history for all individual participants. The individual participant data is the basis for determining the employer's annual contribution. After the actuarial findings, contributions are made by the employer to cover the plan's anticipated present and future liabilities. Also under the County Plan, pursuant to Milwaukee County general ordinances, §§ 201.24 through 5.1., different percentage multipliers for calculating the benefits to be paid to the different groups of County employees are used. The Milwaukee County Pension Board administers the County Plan and submits the pertinent data, including the actual contribution required, to the County's board of supervisors each year.

The State Plan is a hybrid plan with characteristics of both a defined contribution plan and defined benefit plan. Defined contribution plans do not provide specific dollar benefits at retirement. The benefits payable to the employees are funded by both the employer and employee. The State Plan places its contributions into an employer accumulation reserve, pursuant to § 40.04(5), STATS. Contributions placed in the accumulation reserve are applied solely to the payment of fixed monthly annuities based on percentages of the final average earnings, multiplied by years of service pursuant to § 40.23(2)(b) and (2m)(e).

## PROCEDURAL STATUS

After the County declined to transfer the contributions on behalf of the non-vested MCADA's, the MCADA's sought a writ of mandamus requiring Milwaukee County to transfer the employer contributions made on behalf of all non-vested MCADA's to the State

Plan. The trial court issued a peremptory writ of mandamus, which ordered that under § 978.12(5)(c)5, STATS., the County had the duty to transfer from the County Plan to the State Plan amounts equal to the contributions made on behalf of the MCADA's reflecting their service as county employees. To accomplish this, the trial court ordered that the County was to calculate the contributions made to the County Plan on behalf of the MCADA's. Milwaukee County appeals this writ.

### DISCUSSION

First, Milwaukee County contends that the trial court erred by determining that contributions were made to the County Plan "on behalf of" petitioners. Basically, Milwaukee County asserts that the legislature mistakes the County Plan for a defined contribution plan. Milwaukee County argues that because the County Plan is a defined benefit plan, no contributions were made to the plan on behalf of the individual participants and, therefore, transferring contributions from the County Plan to the State Plan is impossible. Further, Milwaukee County contends that § 978.12(5)(c)5, STATS., must be construed as a nullity because it acts on amounts that never existed and cannot be calculated. We reject the County's interpretation as contrary to fundamental principles of statutory analysis.

The issue presented concerns the construction of § 978.12(5)(c)5, STATS., which we review as a question of law without deference to the trial court. *See State v. Pham,* 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987). In construing a statute, we must ascertain and give effect to the intent of the legislature. *Id.* at 34, 403

N.W.2d at 36. When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *In re P.A.K.*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681-82 (1984). If a statute is ambiguous, we look to its content, subject matter, scope, history and the objective to be accomplished to ascertain its reasonable meaning. *Boltz v. Boltz*, 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). A statute is ambiguous if reasonable persons could disagree as to its meaning, and whether a statute is ambiguous is a question of law. *In re D.S.*, 142 Wis. 2d 129, 134, 416 N.W.2d 292, 294 (1987). Furthermore, a fundamental premise of statutory construction is that it should avoid any result that would be absurd or unreasonable. *State v. Moore,* 167 Wis. 2d 491, 496, 481 N.W.2d 633, 635 (1992).

After construing the statute, we review the trial court's findings as to the County's ability to calculate the contributions. The trial court's factual findings will only be reversed if they are clearly erroneous; however, we independently review the question of law. *DOR v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979).

The only contributions at issue under § 978.12(5)(c)5, Stats., are the employer required contributions under § 40.05(2), Stats.[3] Contributions

[3] Generally there are two components to pension plan funding, normal cost and accrued liability (including unfunded liability). Normal costs consist of the pension plan's administrative and annual benefits costs. The other component of the contribution is the amortization of unfunded past service, established by § 978.12(5)(c)5, Stats., that the employee may transfer employer contributions made on his or her behalf, "not includ-

transferred from the County Plan to the State Plan are to be placed in the employer required contribution account provided by § 40.04(5).[4] Thus, pursuant to § 978.12(5)(c)5, no separate accounts are maintained for the individual employees. Furthermore, § 40.02(17)(g) distinguishes these contributions referring to them as "employer required contributions."

This part of the state pension scheme reflects a defined benefit plan, not a defined contribution plan.

---

ing any employer contributions for unfunded prior service liability . . . ." This language establishes the unfunded accrued liability, which is the amount of the plan's accrued liability exceeding the present value of the plan's assets. *See* Daniel Keating, *Pension Insurance, Bankruptcy and Moral Hazard,* 1991 WIS. L. REV. 65, 73 n.44 (discussing ERISA-created minimum requirements). The unfunded accrued liability is not at issue in the case at bar, as it is not to be transferred to the State Plan as established by the statute. Accordingly, the funds at issue here are the portion of the County's contribution allocable to normal cost.

[4] Section 40.04(5), STATS., states:

> An employer accumulation reserve shall be maintained within the fund to which, without regard to the identity of the individual employer, shall be:
>
> (a) Credited all employer required contributions.
>
> (b) Credited, as of each December 31, all fixed annuity division interest not credited to other accounts and reserves under this section.
>
> (c) Debited the aggregate excess of 1) the amount of each single sum benefit or in the case of an annuity the present value of the annuity over 2) the amount equal to the accumulated credits of the participant in the employe accumulation reserve applied to provide for the benefit or annuity.
>
> (d) Credited as of the date of termination of any annuity under s. 40.26 or 40.63(9)(c) with the excess of the then present value of the terminated annuity over the aggregate amount of credits reestablished in the accounts of the participant.

Had the legislature intended a defined contribution plan, it would have articulated that the transfer of these contributions be made to individual accounts in the employee accumulation reserve pursuant to § 40.04(4)(a), STATS. Section 978.12(5)(c)5, STATS., specifically requires that the transfers be made to the employer required contribution account, also known as the employer accumulation reserve.

Milwaukee County's argument that § 978.12(5)(c)5, STATS., is a purely defined contribution plan and thus the contributions from the County Plan would not interface with the State Plan is contrary to the basic tenets of statutory construction. Examining the content, subject matter, scope and objective of § 978.12(5)(c)5, we conclude that in order to avoid an absurd or unreasonable result, the pertinent part of this statute exhibits a defined benefit plan, providing provisions for contributions to be transferred into the account furnished by § 40.04(5), STATS. The intent of the statute was to provide the MCADA's the means of obtaining credit in the State Plan after their job category switched from county to state employee.

Labels aside, we first must address Milwaukee County's argument that the amounts to be transferred never existed and cannot be calculated. Milwaukee County argues that placing a value on the contributions on behalf of the non-vested MCADA's is impossible. Section 40.05(2)(a), STATS., sets forth the actuarial method used:

> Each participating employer shall make contributions for current service determined as a percentage of the earnings of each participating employe, determined as though all employes of all participating employers were employes of a single employer, *but with a separate percentage rate deter-*

*mined for the employe occupational categories
specified under s. 40.23(2m).* A separate percentage
shall also be determined for subcategories within
each category determined by the department to be
necessary for equity among employers. (Emphasis
added.)

This method is similar to Milwaukee County gen-
eral ordinances §§ 201.24 through 5.2., which are
comparable to § 40.23(2m), STATS., and sets forth the
different percentage multipliers used for the various
employee levels. Thus, § 40.05(2)(a) prescribes sub-
stantially the same actuarial methodology used by the
Milwaukee pension board's actuaries in determining
contributions required for the County Plan.

The trial court based its factual findings on an
expert actuary's conclusions from the County's actua-
rial reports. Examining these reports from 1981 until
1990, the contribution requirement is broken down and
allocated between the categories of employees includ-
ing, general employees, deputy sheriffs and elected
officials. The required contribution for each group is
expressed as a percentage of the relevant payroll. This
information is readily available to the County via its
own actuarial reports and methodology. The next step
is to determine the appropriate allocations for the indi-
vidual employees within each group. This figure may
be ascertained by applying the same percentage to the
covered earnings received by the individual during the
plan year. Considering the percentage of the total con-
tribution made on behalf of each individual that is
allocable to normal cost, the County would apply the
same percentage that the total normal cost bears to the
total required contribution. Last, the amount of the
contributions must be adjusted to include the interest

actually accrued, which is also available to the County through its actuarial and annual reports.

Furthermore, from this evidence based on the actuarial reports and the pension board's 1992 annual report, the County Plan has considerable net assets. The County's pension benefit obligation to the non-vested MCADA's is less than one percent of its funds.[5] This actuarially insignificant amount will not affect the County Plan's ability to meet its obligations.[6]

The trial court's factual finding that the County is able to calculate contributions is not a clearly erroneous conclusion. The fact that the method of computing the amounts to be transferred is not entirely delineated

---

[5] The relevant affidavit of Joan Gucciardi, an actuarial expert, states:

> According to the Board's 1992 annual report . . . as of December 31, 1992, MCERS [County Plan] had net assets available for benefits in the total amount of $953,383,532. It had pension benefit obligation[s], both vested and non-vested, totalling $836,358,356, leaving net assets totalling $117,025,176 in excess of pension benefit obligations.
>
> The transfer of approximately $365,252 from MCERS [County Plan] to the Wisconsin Retirement System on behalf of the 42 MCADA's would involve only 31/10,000 or approximately 31/100 of one percent (0.31 percent) of the net assets in excess of MCERS' [County Plan's] pension benefit obligations. This is an actuarially insignificant amount and will have no effect on the plan's ability to meet its benefit obligations in full, particularly since the plan is overfunded by $117,025,176. Thus the transfer will have no effect whatsoever on any other member's benefits.

[6] We recognize that defined benefit plans use actuarial estimates and funding methods enabling the employer to allocate for unexpected or additional plan costs, such as the case at bar. Thus, inherent in the plan is its ability to cover such future liabilities. *See* Regina T. Jefferson, *Defined Benefit Plan Funding: How Much is Too Much?*, 44 CASE W. RES. L. REV. 1, 5 (1993).

in § 978.12(5)(c)5, STATS., does not mean that the amounts can never be calculated. The amounts of contributions are readily available from actuarial reports and records maintained by the County. Even though there is no specific formula for computing the contributions articulated in the statute, we conclude there is a process which would reasonably calculate such contributions. Thus, the validity of § 978.12(5)(c)5 is not impaired by the absence of a detailed formulae to compute the contributions. To conclude otherwise contradicts the intent of the statute, which is to enable the MCADA's to receive credit toward their retirement for their work as county employees.

## MILWAUKEE COUNTY'S PLAIN AND POSITIVE DUTY

Next, Milwaukee County contends that mandamus is not the proper remedy to compel the transfer of the funds from the County Plan to the State Plan because the County does not have a plain and positive duty under § 978.12(5)(c)5, STATS. We disagree.

Under Wisconsin law, mandamus is a discretionary writ, which we will not reverse absent an erroneous exercise of its discretion. *Miller v. Smith,* 100 Wis. 2d 609, 621, 302 N.W.2d 468, 474 (1981). Our supreme court has held that a party seeking a writ of mandamus must show: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages will result if not performed; and (4) no other adequate remedy at law. *State ex rel. Iushewitz v. Milwaukee County Personnel Rev. Bd.,* 176 Wis. 2d 706, 711, 500 N.W.2d 634, 636 (1993). Further, a statutory duty may be enforced by mandamus even if the statute is unclear and requires statutory construction. *State ex rel. Lewandowski v.*

*Callaway,* 118 Wis. 2d 165, 171, 346 N.W.2d 457, 460 (1984).

Milwaukee County contends that the duty imposed by the statute is not clear, hence there is no plain or positive duty under requirement (2) above.[7] We look to the language of the statute, which articulates when and what an employee may transfer from the County to the State Plan and how this is to be achieved:

> [T]he participating employe may . . . elect to transfer . . . all employer contributions made on his or her behalf, not including any employer contributions for unfunded prior service liability made on the basis of his or her earnings, to the retirement system established under chapter 201, laws of 1937, [County Plan] together with all interest actually accrued on those contributions, to the employer required contribution account provided for by § 40.05(2) [State Plan].

Section 978.12(5)(c)5, STATS.

Section 978.12(5)(c)5, STATS., states that the County is to transfer the amounts of the employer contributions, together with the interest accrued on those contributions, to the State Plan under § 40.05(2), STATS. As discussed above, compliance with the statute will involve calculating the amounts via data readily available to the County. Furthermore, mandamus is not necessarily rendered inappropriate simply because the statute which imposes the duty requires judicial

---

[7] Milwaukee County does not contend that the petitioners did not show the other three requirements articulated by *State ex rel. Iushewitz v. Milwaukee County Personnel Rev. Bd.,* 176 Wis. 2d 706, 711, 500 N.W.2d 634, 636 (1993).

interpretation. *See Mazurek v. Miller,* 100 Wis. 2d 426, 430, 303 N.W.2d 122, 125 (Ct. App. 1981). Because we conclude that the contributions are capable of calculation and that the duty is articulated in the statute, we determine that mandamus is an appropriate remedy in this situation.

## CONSTITUTIONALITY OF § 978.12(5)(c)5, STATS.

Next, Milwaukee County contends that § 978.12(5)(c)5, STATS., is unconstitutional because it is private or local legislation and also that it was a taking of private property without due process of law. We reject both of these constitutional arguments.[8]

The constitutionality of a statute is a question of law that we review de novo. *State v. Hanson,* 182 Wis. 2d 481, 485, 513 N.W.2d 700, 701 (Ct. App. 1994). A statute is presumed to be constitutional, and the party challenging its constitutionality has the burden of overcoming this presumption. *State v. Hart,* 89 Wis. 2d 58, 64, 277 N.W.2d 843, 846 (1979). Further, the moving party must prove any unconstitutionality beyond a

[8] Milwaukee County also argues two additional constitutional issues not raised at the trial court level. As a general rule, we do not review an issue raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). Constitutional issues may be considered on appeal for the first time, but a compelling reason must exist to consider the issue. *State v. Yellow Freight Sys.,* 101 Wis. 2d 142, 158, 303 N.W.2d 834, 842 (1981). We have reviewed Milwaukee County's arguments and conclude that there are no compelling reasons to decide them. The petitioners did not have the opportunity to make a record and present specific evidence refuting the vagueness and impairment of contract arguments.

reasonable doubt. *State ex rel. Smith v. Oak Creek,* 139 Wis. 2d 788, 802, 407 N.W.2d 901, 907 (1987).

Milwaukee County contends that § 978.12(5)(c)5, STATS., is unconstitutional because it constitutes impermissible private or local legislation. Under WIS. CONST. art IV, § 18, "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." The leading case pertinent to this discussion is *Milwaukee Brewers Baseball Club v. DH&SS,* 130 Wis. 2d 79, 387 N.W.2d 254 (1986). Our supreme court held:

> [A] legislative provision which is specific to any person, place or thing is a private or local law within the meaning of art. IV, § 18, unless: 1) the general subject matter of the provision relates to a state responsibility of statewide dimension; and 2) its enactment will have direct and immediate effect on a specific statewide concern or interest.

*Id.* at 115, 387 N.W.2d at 269. This test determines whether a specific provision is an exception to the separate bill requirement. *Id.* at 115, 387 N.W.2d at 270. Basically, the general subject matter of the provision must relate to a statewide responsibility and must address a specific statewide concern. *Id.*

Section 978.12(5)(c)5, STATS., fulfills both requirements. The legislature's intent in promulgating this subsection was to produce a uniform statewide pension plan for prosecutors. The legislature accomplished its intent in the context of 1989 Wis. Act 31, § 2900, codified at ch. 978. Pursuant to this chapter, all district attorneys were made state officers throughout Wisconsin. Thus, the creation of the uniform system of pension benefits, including credit for prior Milwaukee County

employment, is a matter of state responsibility reaching statewide dimensions.

Further, making public employee pension plans uniform throughout the state by providing for prior service credits is a legitimate statewide concern for purposes of WIS. CONST. art. IV, § 18. *Columbia County v. Board of Trustees,* 17 Wis. 2d 310, 322, 116 N.W.2d 142, 148 (1962). In *Columbia County,* legislation requiring twenty-six counties to join the retirement fund and pay for their employees' prior service credits was held not to be private or local because it served statewide public concern for making county pensions systems uniform throughout the state. *Id.* Chapter 978, STATS., also seeks uniform treatment of employees, with the specific subsection placing the MCADA's on equal footing with all other assistant district attorneys.

We also reject Milwaukee County's argument that because only non-vested MCADA's would be affected by the statute, the legislation does not involve matters of statewide concern. This subsection fills the gap in the overall statutory scheme of 1989 Wis. Act 31, eliminating the disparity in prior service credit of the non-vested MCADA's. Consequently, we conclude that Milwaukee County has not overcome the presumption that this statute is constitutional beyond a reasonable doubt.

Last, Milwaukee County contends that transferring pension contributions pursuant to § 978.12(5)(c)5, STATS., is a taking of property interests without due process of law. Specifically, Milwaukee County asserts that the vested MCADA's have a property interest in the County Plan and the non-vested MCADA's do not. Milwaukee County characterizes transferring funds on

behalf of the non-vested MCADA's as a taking from those who have vested rights. We disagree.

The Fourteenth Amendment to the United States Constitution prevents the state from depriving a person of life, liberty or property without due process of law. *Schmidt v. State,* 68 Wis. 2d 512, 519, 228 N.W.2d 751, 755 (1975). A person has a property interest in a benefit protected by the due process clause of the Fourteenth Amendment if he or she has a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). In *Roth,* the Supreme Court also notes:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.*

Thus we look to independent sources of law to examine whether pension or retirement benefits are property interests. In *Morrison v. Board of Education,* 237 Wis. 483, 297 N.W. 383 (1941), our supreme court held that a statute or ordinance fixing salaries, tenure and compensation of public employees in Wisconsin is presumed not to create private contractual or vested rights unless the legislature declares otherwise. *Id.* at 487, 297 N.W. at 385.

Likewise, a New York federal district court concluded that police retirees had an entitlement to receive pension payments, but did not have the ability to direct particular assets; therefore, they did not have

a property interest in the investment earnings of their pension. *Crown v. Patrolmen's Variable Supplements Fund,* 659 F. Supp. 318, 320 (S.D.N.Y), *aff'd,* 819 F.2d 47 (2d Cir. 1987).

Moreover, if the MCADA's are required to relinquish their years of County service and the contributions made on their behalf, Milwaukee County will receive the benefit of the forfeited contributions. We conclude that neither the vested MCADA's nor the County Plan itself has a legitimate claim of a property interest in these contributions. Accordingly, we conclude that the transfer of contributions is not a taking without due process of law and Milwaukee County failed to prove the unconstitutionality of § 978.12(5)(c)5, STATS., beyond a reasonable doubt.

Because we conclude that the County is capable of determining and transferring contributions on behalf of the petitioners, that Milwaukee County has a plain and positive duty to do so and that § 978.12(5)(c)5, STATS., is constitutional, we affirm the trial court.

*By the Court.*—Order affirmed.